## J. L. CREW ET AL. v. THE BRADSTREET CO.

### APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued March 24, 1890—Decided April 7, 1890.
[To be reported.]

1. Contracts stipulating for exemption from liability for negligence are not favored by the law, and, in some instances, as in the case of common carriers, they are prohibited entirely, as being against public policy; in all cases in which they are permitted and effect given to them, such contracts should be construed strictly, with every intendment against the party seeking their protection.

2. A company doing business as a commercial agency and for a consideration furnishing to its subscribers a printed book purporting to give, inter alia, the amount of capital paid into the treasuries of mercantile corporations in the United States and Canada, will be liable to a subscriber for negligently publishing in such book a misstatement upon the subject which misleads him to his injury.

(a) The contract between such a company and its subscribers, under which such books were furnished, stipulated that said company should not be liable for any loss or injury occasioned by the neglect or other act of any officer or agent of the company, in procuring, collecting and communicating information, and that the company did not guarantee the correctness of such information:

3. The exemption from liability conferred by this contract applied to the negligence of particular officers or agents, but not to the negligence of the company as such; wherefore, the company was responsible for a loss occasioned by its issuing such books with a gross error therein, when the information furnished to it by its agents was correct, and the error occurred in the printing of the book.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and
MITCHELL, JJ.

No. 281 January Term 1889, Sup. Ct.; court below, No. 691
December Term 1884, C. P. No. 3.

On January 31, 1885, J. Lewis Crew and Lewis J. Levick,
trading as Crew, Levick & Co., brought case against the Brad-
street Company, filing a declaration, which averred in substance
that the defendant was engaged in carrying on the business of
a commercial agency, and represented to the plaintiffs and the
public that for certain fees and rewards it would use due dili-
gence and care in ascertaining the financial standing of all per-
sons and corporations doing business in the United States, and
issue a book giving a statement thereof and of the amount of
capital paid into the treasuries of the various corporations of
the United States; that, relying on said representations, the
plaintiffs subscribed to the said agency and purchased one of
the said books, paying therefor the sum of $100; that it was
the duty of the defendant to use great care and diligence in
obtaining the information aforesaid and in printing the said
book; but the defendant, not regarding its said duty to the
plaintiffs, carelessly and negligently printed and published in
said book that the Union Refining Manufacturing Company, a
corporation of the state of New Jersey, had $600,000 capital
paid in, and the plaintiffs, relying upon said representation of
the defendant, sold goods to said refining company on credit to
the amount of $1,500; whereas the defendant had not used due
care or diligence in ascertaining the pecuniary ability of said
refining company and in printing and publishing said book,
and said refining company did not have said amount of capital
or any part thereof, but was at the time of publishing said
book, insolvent and not fit to be trusted with goods on credit;
that said sum of money was wholly unpaid to the plaintiffs,
and they were likely wholly to lose the same, to their damage,
etc. The defendant's plea was not guilty.

At the trial, on October 30, 1888, the plaintiffs presented
testimony tending to show the following facts:

For a number of years prior to 1884, the plaintiffs, whose
place of business was in Philadelphia, were subscribers to a
mercantile agency carried on by the defendant. On Janu-

ary 3, 1884, their subscription was renewed for the ensuing year, by a written contract signed by the plaintiffs, as follows:

" The Undersigned hereby employs The Bradstreet Company, from January 1, 1884, to January 1, 1885, to procure, to the best of its ability, information concerning the responsibility and character of Mercantile Persons inquired for, within the states represented in the volumes loaned, said inquiries not to exceed 200, except as hereinafter agreed. And in consideration of such service, including the loan of the January, 1884, July, 1884,             188     and             188     volumes of its U. S. & Ca. reports, the undersigned hereby agrees to pay The Bradstreet Company One hundred and twenty-five dollars, $62.50 each January 15, '84, and July 15, '84, and for each inquiry exceeding the 200 before mentioned, thirty-three and one third cents on demand. And it is further expressly agreed by the undersigned, that all information, whether printed, written or verbal, furnished by The Bradstreet Company to the undersigned, shall be held in strict confidence, and shall never be revealed to the persons reported; that the undersigned will neither ask for information for the use of other parties, nor permit it to be done; that the said company shall not be liable for any loss or injury caused by the neglect or other act of any officer or agent of the company, in procuring, collecting, and communicating said information; that the said company does not guarantee the correctness of the aforesaid information, and that the said volumes to be loaned, as aforesaid, shall be returned to the company, without notice from it, upon the receipt by the undersigned of any subsequent edition of its books, or at the expiration of the subscription term; . . . . ."

About the middle of December, 1884, a salesman of the plaintiffs went to New York to sell a lot of parafine wax for the plaintiffs. His instructions were to sell for cash. Receiving from the Union Refining etc. Company an offer to purchase at thirty days' acceptance, he sent a telegram to the plaintiffs at their place of business in Philadelphia, stating the offer. Upon receiving this telegram, Mr. Levick, one of the plaintiffs, referred to the volume of reports issued by the defendant in July, 1884, which was furnished to the plaintiffs in pursuance of the contract of January 3, 1884, and found therein the state-

Opinion of Court below.

ment that the refining company had "capital paid in, $600,000."
Thereupon he telegraphed to the salesman to accept the offer.
In pursuance of his telegram the sale was made, and the plaint-
iffs after shipping the goods drew on the purchaser for their
price, $1,500, at thirty days.

Some days afterward, Mr. Crew, who was not present when
the telegrams from and to the salesman were received and sent,
learning of the sale of the wax, sent to the defendant for a
special report as to the standing of the refining company, and
received a reply stating that the company was reported by its
president to have $20,000 paid-in capital and an indebtedness
of about $5,000. He then sent to the defendant the following
communication: "Gentlemen: We notice in your book you
have the 'Union Refining & Manufacturing Co.,' Jersey City,
rated as $600,000 capital paid in. In the report which we re-
ceived from you to-day, you state that only $20,000 capital
has been paid in. How are we to reconcile these two reports.
We should be glad to hear from you." The reply to this letter
was written at the foot thereof, and was as follows: "Typo-
graphical error in book, which should read auth. cap. $600 M."

The draft of the plaintiffs upon the Union Refining & Man-
ufacturing Company was not paid at maturity nor thereafter.
The plaintiff Levick testified that when it matured the com-
pany was insolvent; that, as the president had informed the
witness, the company's works had been destroyed by fire and
having no insurance it had lost thereby $15,000. The books
issued by the defendant in July and October, 1883, and Janu-
ary, May, July and October, 1884, all contained the statement
that the Union Refining & Manufacturing Company had a
paid-in capital of $600,000.

At the close of the testimony for the plaintiffs, the court,
GORDON, J., on motion of the defendant, entered a judgment
of nonsuit, with leave, etc.

A rule to show cause why the judgment of nonsuit should
not be taken off having been argued, the following opinion was
filed, GORDON, J.:

The contract upon which suit is brought is that the defend-
ants shall furnish information in reply to inquiries made by the
plaintiffs, and in consideration of such service, including the

Opinion of Court below.

loan of the January and July, 1884, volumes, the plaintiffs agreed to make certain payments. It is expressly stipulated in this agreement, "that the company shall not be liable for any loss or injury caused by the neglect or other act of any officer or agent of the company, in procuring, collecting and communicating said information; that the said company does not guarantee the correctness of the aforesaid information."

There seems to have been but one inquiry, and that was correctly answered; and, therefore, strictly construing the contract as relating only to information upon inquiries, the plaintiffs had no cause of action. It is contended, however, that the defendants are responsible for the false information contained in the July report. This volume makes no part of the defendants' duty under the contract. It is true that the loan of the book was paid for, but the information therein contained was in no way stipulated to be correct. Nor could it be inferred from the loan of the book that the subject matter of it was to be considered as written in the contract.

It is also contended that this contract, so far as it saves the defendants from liability for the falsity of the information furnished, is inoperative upon the ground of public policy. The defendants are private individuals, performing a private business for private persons. It gives them no privileges which every citizen has not, and imposes no duty which is not imposed upon the individual citizen. They are not compelled by the nature of their occupation to deal with any one; and no one has a right to compel them to take business. In other words, they perform no public functions and therefore owe no duties to the public.

This contract has already received judicial construction by Judge BUTLER: Duncan v. Dun, 7 W. N. 246. He says: "We understand the class of cases to which reference has been made by counsel, in which it has been held that a party shall not, cannot protect himself by such a saving clause against his own gross negligence. But these are cases in which public policy forbids such a rule; as, for instance, the cases of hotel keepers, common carriers and the like, who are engaged in a calling of a public nature. This is not of that description, in the judgment of this court; and this proviso is not therefore to be so read."

—Thereupon the plaintiffs took this appeal, specifying the entry of the judgment of nonsuit and the refusal to take off said judgment for error.

*Mr. Theodore F. Jenkins*, for the appellants:

1. This action was not upon the contract, but was in case for the defendant's negligence. The contract does not conclude the plaintiffs. In the first place it provides for exemption from liability for negligence of "any officer or agent of the company," but not for the negligence of the company itself; and there is a very broad distinction between the act of a corporation, and the act of an agent or officer of a corporation; Culver v. Real-Estate Co., 91 Pa. 367; Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Wright's App., 99 Pa. 425; American Steamship Co. v. Landreth, 102 Pa. 131; Duncan v. Dun, 7 W. N. 246. The act complained of, in the present case, is that of the corporation defendant, in negligently issuing a printed volume of reports containing a flagrantly false statement.

2. Again; the negligence provided against is that of officers or agents " in procuring, collecting or communicating said information," and the information referred to is that " concerning the responsibility and character of mercantile persons inquired of," as contra-distinguished from what was contained in the printed volumes. It is too plain for argument that the information "to be held in strict confidence" and not to be asked for, for the use of other parties, etc., cannot be the contents of these volumes, and grammatical construction requires that the expression, "said information," occurring later in the same sentence, shall be taken as referring to the same thing. Duncan v. Dun, 7 W. N. 246, relied on by the court below, was a case where special information was furnished in answer to a particular inquiry. If the language used be ambiguous, it must be construed most strongly against the defendant.

3. It is against public policy to allow any person, natural or artificial, to contract against liability for negligence: Camden etc. R. Co. v. Baldauf, 16 Pa. 67; Farnham v. Railroad Co., 55 Pa. 53; American Exp. Co. v. Sands, 55 Pa. 140; Grogan v. Express Co., 114 Pa. 523. In Duncan v. Dun, 7 W. N. 246, the agents, by stipulation, were the plaintiff's rep-

Arguments.

resentatives. This defendant was bound to ordinary diligence in publishing its volumes, and was bound to know that injury might result from its negligence: 3 Addison on Contracts, § 401. Ordinary negligence is the absence of reasonable care according to the circumstances, and is a question for the jury: Penna. R. Co. v. Peters, 116 Pa. 206. The fact that the same misstatement occurred in prior and subsequent issues, is evidence of negligence: Pullman P. Car Co. v. Gardner, 14 W. N. 17. The explanation that the statement was a typographical error, will not excuse the defendant, nor will the contention that a fire, causing a loss of $15,000, occasioned the total insolvency of the company, negative the averment that the plaintiffs' loss resulted from the negligence of the defendant.

*Mr. Isaac S. Sharp* (with him *Mr. S. H. Alleman*), for the appellee:

1. This action is not for alleged fraud, or for knowingly misrepresenting the refining company's capital. It is clear that the plaintiffs' declaration called upon the defendant to respond to an alleged breach of contract, and to that only. To recover, apart from the contract, it would be essential to allege a scienter in the narr, and prove it: Chitty's Pl., *376; Chandler v. Lopus, 1 Sm. L. Cas., *183. On the basis of the contract the defendant is not liable. The interpretation on which the plaintiffs seek to confine the exemption to information other than that contained in the printed reports, is not a fair and reasonable one, whether we regard the grammatical construction or the general object of the provision. In the natural course of business the reports must be the chief source of information to the subscriber, and the same reasons exist for applying the stipulation to them, as in the case of special communications.

2. The principle of public policy, invoked by the plaintiffs, is not applicable to the case at bar, the business of a mercantile agency being of a private, not of a public character: Duncan v. Dun, 7 W. N. 246; Bradstreet v. Everson, 72 Pa. 124. If exemption cannot be contracted for by them, the rates of subscription must be increased, and it is inequitable to repudiate a stipulation based upon reduced charges: Hart v. Penna.

R. Co., 112 U. S. 331.   Nor is it a new doctrine that one may contract for indemnity against the negligence of his servants or even of himself; it is familiar in the law of fire insurance: Wood on Insurance, 274–286; Cumberland etc. Co. v. Douglas, 58 Pa. 419; Phœnix Fire Ins. Co. v. Cochran, 51 Pa. 143; Citizens Ins. Co. v. Marsh, 41 Pa. 387; Karow v. Continental Ins. Co., 57 Wis. 56 (46 Am. Rep. 17).   It is only in a public or quasi public business that there is any limitation upon the power to stipulate for non-liability for negligence.

3. If the plaintiffs can recover upon the contract at all, they must recover upon it as a whole, and if a part of it is void, the whole is void: Gottsman v. Insurance Co., 56 Pa. 210; Fire Association v. Williamson, 26 Pa. 196.   It is said, however, that the act complained of was the act of the company itself, and not that of its officers or agents.   But a corporation's acts can be done only through agents.   If it can be said that the company can act by its stockholders, or even by its board of directors, there is no evidence to show that they authorized the negligent act complained of, which was plainly that of an employee or agent.   There is, however, no legal evidence that the report complained of was not true.   The special report was not an admission of facts, but merely a statement of the declarations of the refining company's president, and the note admitting a typographical error was a declaration by a clerk, which, not being part of the res gestæ, was not evidence against the defendant: Wharton on Ev., § 1173, note 1, §§ 1175, 1180; Rockwell v. Taylor, 41 Conn. 59.

4. As it is apparent from Levick's testimony that the loss of the plaintiffs was caused by an event supervening after the sale, to wit the destruction by fire of the refining company's property, the defendant is not responsible, the information furnished by it not being the proximate cause of the loss: Jones v. Gilmore, 91 Pa. 310; Morrison v. Davis, 20 Pa. 171; McGrew v. Stone, 53 Pa. 441; 2 Parsons on Contracts, 455; 2 Greenleaf on Ev., §§ 256, 261; Mayne on Damages, 6; Story on Agency, § 220; Denny v. Railroad Co., 13 Gray 481; Walker v. Goe, 3 H. & N. 395; s. c. 4 H. & N. 351; 2 Sm. L. C., 556; Morrison v. Davis, 20 Pa. 171; Scott v. Hunter, 46 Pa. 192.   Moreover, the mere non-payment of the draft is not sufficient evidence of the refining company's insolvency.

If the defendant is liable at all, it is as a guarantor, and pursuit to insolvency, or proof that this would be useless, is essential to recovery: Brown v. Brooks, 25 Pa. 210; Isett v. Hoge, 2 W. 128; Reigart v. White, 52 Pa. 438; Kramph v. Hatz, 52 Pa. 525; Rudy v. Wolf, 16 S. & R. 79; Gilbert v. Henck, 30 Pa. 205; Kirkpatrick v. White, 29 Pa. 176. The suit was prematurely brought.

OPINION, MR. CHIEF JUSTICE PAXSON:

It is not denied that the book furnished the plaintiffs by the Bradstreet Company contained a serious error. The Union Refining & Manufacturing Company of Jersey City was therein rated as having $600,000 capital actually paid in, whereas in fact that was the amount of its authorized capital, of which only $20,000 had been paid in. This was explained by the Bradstreet Company as a typographical error. The plaintiffs allege that on the faith of the statement contained in the book they sold the Union Refining & Manufacturing Company a bill of merchandise amounting to $1,457.47, which has been wholly lost by reason of the insolvency of said company. The defendants contend that they are protected by the following provision of their contract with the plaintiffs: "That the said company shall not be liable for any loss, or injury caused by the neglect or other act of any officer or agent of the company in procuring, collecting, and communicating said information; that the said company does not guarantee the correctness of the said information," etc.

Contracts against liability for negligence are not favored by the law. In some instances, such as common carriers, they are prohibited as against public policy. In all cases, such contracts should be construed strictly, with every intendment against the party seeking their protection. This contract provides for exemption from the negligence of the officers and agents of the company, but not from its own. We think the fair and reasonable construction of it is, that the company should not be liable for the mistakes of those who collect and impart the information. Thus, if the company had been informed by the person who gave them the report as to the Union Refining & Manufacturing Company, that it had $600,000 of paid-up capital, and this statement had been furnished as re-

ceived, we think the defendants would not have been responsible. Information as to the financial standing of individuals, firms, and corporations is sometimes difficult to procure, and cannot in all instances be entirely accurate. It is a delicate inquiry always, and involves the employment of a large number of agents, scattered over a wide extent of country. In some instances the information furnished may not only be erroneous, but wilfully false, to gratify the private malice of the informant against the subject of the inquiry. The contract referred to was evidently intended to protect the company from the consequence of errors, from whatever cause, in the collection and transmission of such information by its agents. Hence, if the company communicates such information as it was received, it may well claim protection under the contract, even though such information should subsequently appear to have been erroneous. Its duty is to give the information which it receives, in good faith, to its customers, or to those who apply for it. In this case, however, the contention is that the report made to the company by its agent was correct, and that the mistake was the blunder of the company in having it erroneously printed in its July book. This book was certainly issued by the company; it cannot be said to be the act of any particular officer or agent, as would be the sending of information as to the standing of a particular individual, or by the transmission of such information by a clerk, in the course of his routine duties, to a subscriber or customer. The contract was against the negligence of particular officers or agents, not against the negligence of the company as such. It was certainly negligence on the part of the company to issue a book containing such a gross error; not the error of the agent who furnished the information, for he furnished it truly, but of the company in sending it out falsely.

It was urged, however, that the Bradstreet Company, if liable at all, were only so as guarantors, and that, as the plaintiffs had commenced no suit against the refining company, they are not entitled to recover against the defendant in this action. We need not discuss this proposition, in view of the evidence that the refining company is insolvent.

The judgment is reversed, and a venire facias de novo awarded.