Warren City Lines, Inc., Appellant, *v.* United Refining Company.

Argued June 17, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Frank L. Kroto, Jr.,* with him *Doyle & Kroto,* for appellant.

*R. T. Mutzabaugh,* with him *Mutzabaugh & Mutzabaugh,* for appellee.

OPINION BY HOFFMAN, J., December 13, 1971:

This is an appeal from an order of the lower court granting defendant-appellee's motion for summary judgment.

In 1957 appellant and appellee's predecessor, Emblem Oil Company, executed an equipment loan agreement covering an oil and gasoline dispensing system previously installed at appellant's bus garage by Emblem in 1950. As consideration for Emblem's loan of the dispensing system, appellant promised to use the equipment only to sell or deliver petroleum products purchased from Emblem.

On May 29, 1969, while the equipment loan agreement was still in effect, two of appellee's repairmen were sent to service the dispensing system at appellant's bus garage. While at the garage, appellee's employees were requested to change the hose on the gasoline dispensing pump covered by the equipment loan agreement. Approximately ten minutes after this was accomplished, a gasoline explosion occurred where defendant's employees had been working, resulting in extensive damage to appellant's property.

Appellant instituted this action in trespass against appellee seeking recovery for the property damage which it sustained. Appellee filed an answer containing new matter pleading an indemnity clause in the

equipment loan agreement.[1] The clause provides that appellant "shall indemnify and save harmless the Emblem Oil Company of and from any and all liability for loss, damage, injury or other casualty to persons or property, caused or occasioned by any leakage, fire or explosion of petroleum products stored in or dispensed from said equipment, or in any way growing out of or resulting from the installation and operation of said equipment, whether the same results from negligence or otherwise."

The lower court held that this indemnity clause exonerated appellee from all liability, and having so held, the court granted appellee's motion for summary judgment. Appellant argues that appellee's negligence is not excused by the indemnity clause for three reasons. We will consider each of these arguments separately.

## I. The Validity of the Indemnity Clause

Appellant's first argument is that the indemnity clause cannot exculpate appellee for a violation of a governmental regulation promulgated pursuant to statutory authority. Our Supreme Court recently reviewed the general validity of exculpatory clauses. In *Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association*, 423 Pa. 288, 224 A. 2d 620 (1966), the Court said "[a]n exculpatory clause is valid if: (a) 'it does not contravene any policy of the law, that is, if it is not a matter of interest to the

---

[1] The clause provides for exculpation and indemnification. We will use the terms "indemnity clause" and "exculpatory clause" interchangeably when referring to it. "While an exculpatory clause . . . differs somewhat from an indemnity clause . . . yet there is such a substantial kinship between both types of contracts as to render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory clauses, and vice versa." *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 435 n. 11 (1963).

public or State. . . .' (Dilks v. Flohr Chevrolet, 411 Pa. 425, 434, 192 A. 2d 682 (1963) and authorities therein cited); (b) 'the contract is between persons relating entirely to their own private affairs' (Dilks v. Flohr Chevrolet, supra, page 433); (c) 'each party is a free bargaining agent' and the clause is not in effect 'a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely.' (Gallagan v. Arovitch, 421 Pa. 301, 304, 219 A. 2d 463 (1966)). [Footnote omitted.]" *Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association,* 423 Pa. at 291-292, 224 A. 2d at 622-623.

Appellant contends that the indemnity clause in the equipment loan agreement contravenes public policy insofar as it was intended to exculpate appellee for its negligent installation and maintenance of a gasoline dispensing system in violation of the State Fire Marshal's regulations. These regulations require that an automatic control must be provided on gasoline dispensing systems which stops the pump when all nozzles have been returned to their brackets, and that electrical equipment used in connection with such systems must conform to the applicable provisions of the National Electrical Code. *Pa. State Police Reg. for the Storage, Handling and Use of Flammable and Combustible Liquids,* §§9-234-1 and 9-51 (1965) (promulgated pursuant to Section 1 of the Act of April 27, 1927, P. L. 450, as amended, 35 P.S. 1181).

Appellant alleges that the nozzle hook-up and electrical switch installed by appellee did not conform to these standards. Assuming that appellant can prove these alleged violations and can show that they were the proximate cause of the explosion and fire, the question is whether the negligent violation of a duly promulgated regulation intended for the protection of the

public will invalidate an exculpatory clause where injury to property rather than persons has resulted.[2] This question is one of first impression in this Commonwealth.

Any attempt by a negligent party to exculpate himself for a violation of a statute intended for the protection of human life is invalid. *Boyd v. Smith,* 372 Pa. 306, 94 A. 2d 44 (1953).[3] Here, instead of a statute, we have a regulation promulgated by the State Fire Marshal. We have found no material basis on which to distinguish between a statute intended for the protection of the public and a regulation which is so intended —both enunciate a public policy and neither can be set aside by a contract between individuals.[4] Cf. *Bell v. McAnulty,* 349 Pa. 384, 37 A. 2d 543 (1944).

The widespread use of property and liability insurance does not invalidate the policy argument against contracts transferring responsibility for the violation of public safety measures enacted or authorized by the Legislature. If all that were involved was the shifting of ultimate loss from one insurer to another, we would not be concerned with the private transfer of risk by

---

[2] We do not intend by this to make any statement as to whether the regulations at issue in the present case were intended for the protection of human life, but for the purposes of argument we will assume that they were.

[3] *Boyd* involved an action for personal injuries resulting from a landlord's failure to provide the leased premises with an adequate fire escape. The landlord relied on an exculpatory clause in the lease as an affirmative defense to the lessee's negligence action. Chief Justice Stern held that the exculpatory clause was "legally inoperative and void" because the landlord had violated a statute "intended for the protection of human life". *Boyd v. Smith,* 372 Pa. at 310, 94 A. 2d at 46 (1953).

[4] In Pennsylvania, statutes and regulations grounded upon public health and safety have been given the same legal effect insofar as a violation of either is negligence *per se. Berkebile v. Brantly Helicopter Corporation,* 219 Pa. Superior Ct. 479, 281 A. 2d 707 (1971).

contractual agreement. It is an unescapable fact, however, that the party transferring the risk has no incentive to use reasonable care when it is held harmless for all losses resulting from its own negligence, and its insurer has no incentive to provide the transferor with loss prevention services or inspection.[5] This creates a particularly dangerous situation for the public where (1) the party transferring the risk is better able to prevent loss or reduce the risk associated with loss, or (2) where the party to whom the risk has been transferred does not fully realize the responsibility which it has received.

The appellee in the present case was clearly in a position to most effectively control the risk associated with the sale and storage of an inherently dangerous fuel by reason of its expertise, skill and ability to diversify its exposure to risk through its dealers. Appellee's attempt to transfer its liability to appellant placed the burden of compliance with the applicable regulations on the party which had neither the knowledge nor the experience to properly comply.[6] Such a transfer of responsibility frustrates the legislative intent to protect the public from acts which the State Fire Marshal, the Legislature's authorized representative, has determined to be not in the public interest.

---

[5] Most liability insurers will provide complete loss prevention engineering for any customer whose premiums (or losses) warrant the expenditure. An insured may have the benefit of regular inspections with detailed recommendations for loss control in his particular case. *Mehr and Hedges, Risk Management in Business Enterprise*, 47 (1963). It is more likely that these services would be requested by an insured or suggested by an insurer where the insured is the party who controls the risk and is responsible for any loss occasioned by it.

[6] Furthermore, it should be noted that the mere *attempt* to transfer liability increases the risk to the public. This occurs because the "ultimate responsibility for given risks becomes very difficult to ascertain", and neither party is motivated to take corrective action. See *Mehr and Hedges*, supra at 86.

Fortunately, only property suffered loss as a result of appellee's failure to observe the fire regulations. If, as we have assumed, these regulations were intended for the protection of human life, the question becomes whether appellee should be held responsible where only the risk to property has materialized.[7] The wrong which the Legislature sought to discourage was the creation of a *risk* to human life, and the deterrent effect of the regulations would be reduced if violators could escape liability because of the fortuity of property rather than human loss.

Appellee created an unacceptable risk to life by violating regulations intended for the protection of the public, and, therefore, we hold that appellee cannot contractually relieve itself of liability for resulting property damage proximately caused thereby.

## II. The Applicability of the Indemnity Clause

Appellant's second argument is that the indemnity clause was intended to hold appellee harmless only for acts of negligence related to items of equipment specified in the equipment loan agreement. The agreement lists a "Tokheim Pump, Model 46; [Serial No.] 02527;

---

[7] Our research has disclosed only one case which considered this question. In an action by customers against a distributor of propane gas for property damage resulting from a fire, the Court of Appeals of Georgia held that plaintiff's petition was sufficient to state a cause of action where the fire was proximately caused by the distributor's negligence in violating regulations of the State Fire Commissioner. The Court invalidated an agreement between the customers and the distributor relieving distributor from liability for damage or loss caused directly or indirectly by escaping gas: "Where, as here, the defendant made the installation on the plaintiff's property, it would be contrary to the regulations, and accordingly contrary to law, for the parties to agree that it be made in violation thereof. Such agreement would be against public policy and therefore void." *Bishop v. Act-O-Lane Gas Service Company*, 91 Ga. App. 154, 166, 85 S.E. 2d 169, 177 (1954).

Only parts used for this pump are as follows: Cabinet, Metering Unit, Variator. All other parts to this pump belong to [appellant]." The indemnity clause holds appellee harmless for loss "caused or occasioned by any leakage, fire or explosion of petroleum products stored in or dispensed from *said equipment,* or . . . resulting from the installation and operation of *said equipment. . . ."* (Emphasis added.) Appellant alleges that it owns the pump, storage tank, hoses, nozzles, electrical lines and switch, and that these items are not covered by the indemnity clause.

The Supreme Court of this Commonwealth has held that where an exculpatory clause is valid, it still must meet the following standards: "(1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law (Galligan v. Arovitch, supra, p. 303; Crew v. Bradstreet Co., 134 Pa. 161, 169, 19 A. 500 (1890)); (2) such contracts 'must spell out the intention of the parties with the greatest of particularity' (Morton v. Ambridge Borough, 375 Pa. 630, 635, 101 A. 2d 661 (1954)) and show the intent to release from liability 'beyond doubt by express stipulation' and '[n]o inference from words of general import can establish it' (Perry v. Payne, 217 Pa. 252, 262, 66 A. 553 (1907)); (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability (Crew v. Bradstreet, supra, p. 169); (4) the burden to establish immunity from liability is upon the party who asserts such immunity (Dilks v. Flohr Chevrolet, supra, p. 436)." *Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association,* supra, 423 Pa. at 292-293, 224 A. 2d at 623, quoted with approval in *Kotwasinski v. Rasner,* 436 Pa. 32, 39, 258 A. 2d 865, 868 (1969).

In *Schroeder v. Gulf Refining Co. (No. 2),* 300 Pa. 405, 150 A. 665 (1930), the Pennsylvania Supreme

Court, using standards virtually the same as those set forth above, construed an indemnity clause almost identical to the clause in the instant case.[8] The Court held that the clause did not relieve the defendant—fuel supplier from responsibility: "[T]he damage for which recompense is here sought was caused, not in the manner contemplated by the release, but by the negligent conduct of the employee of the defendant in permitting gasoline to overflow from the intake pipe while filling the underground container. . . ."

"The contract here related to a pump installed by the defendant company, and the casualties provided for were those *resulting from the use of that particular device. The tank was separate and apart and owned by plaintiff, and though the pump was employed to draw gasoline therefrom when required, yet the act causing the loss did not result from its operation, but from the negligence of the servant of defendant in permitting the overflow at the intake when transferring gasoline from his truck.* The filling of the tank cannot be construed to be an operation of the pump. The defendant provided, in its agreement[,] for a release, from the consequences of an improper installation of the article which it supplied, and also for injury occurring from its [the pump] actual employment in drawing the supply from the tank. *Defendant properly protected itself from damages; for this act would be solely within the*

---

[8] "That the party of the second part shall indemnify and save harmless the party of the first part of and from any and all liability for loss, damage, injury or other casualty, to persons or property, caused or occasioned by any leakage, fire or explosion of gasoline stored in said tanks, or drawn through said pump, or any other casualty in any way growing out of or resulting from the installation and operation of said equipment; whether due to imperfection in said equipment, or to any fault in the installation and operation thereof, whether the same arises from negligence or otherwise." *Schroeder v. Gulf Refining Co. (No. 2)*, 300 Pa. at 410, 150 A. at 667 (1930).

*management of plaintiff, and, in its performance, the defendant would have no part or control. The apparent purpose of the release was to provide against negligence of others, such as the plaintiff, the manufacturer who supplied the device, the one who installed it, or third parties, but not from the carelessness of defendant's employees in delivering oil into the tank, even though the fuel would subsequently be drawn through the pump, as the needs of customers made this necessary."* 300 Pa. at 411-412, 150 A. at 667. (Emphasis added.)

*Schroeder* clearly establishes that the grant of summary judgment in the instant case was error. It is doubtful that the parties intended to release appellee from liability for its *own negligence* where the acts complained of are alleged to have been solely within the control of appellee and where these acts are alleged to have been in connection with the installation and repair of equipment not covered by the agreement. However, we do not wish to prevent appellee from having an opportunity to show that the parties intended such a release. Therefore, as to any acts of negligence which are not in violation of regulations intended for the protection of the public, we find that the applicability of the indemnity clause is not clear on its face and must be determined at trial.

### III. Retroactive Application of the Indemnity Clause

Finally, appellant argues that the indemnity clause was not intended to save appellee harmless from acts of negligence or negligent conditions which occurred or were created prior to the date of the equipment loan agreement.

In *Employers Liability Assurance Corporation,* supra, and *Kotwasinski,* supra, the Pennsylvania Supreme

Court held that if a clause in a written agreement purports to extend immunity from liability for negligent conduct *before* as well as *after* the execution of the agreement, the intent of the parties to that effect must be expressed with the utmost clarity and without any ambiguity: "[I]f a party seeking immunity from liability for negligent conduct intends exculpation for past as well as future negligent conduct it is his obligation to express in the agreement such intent in an unequivocal manner; absent a clear expression of intent, the clause of exculpation will not be so construed." *Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association,* supra, 423 Pa. at 295, 224 A. 2d at 624, quoted with approval in *Kotwasinski v. Rasner,* supra, 436 Pa. at 40, 258 A. 2d at 869.

The equipment loan agreement fails to disclose any intention by the parties thereto to exculpate appellee from prior acts of negligence. Again, we believe that appellee should have an opportunity to establish otherwise at trial.

For the above reasons the court below should not have entered a summary judgment.

Judgment reversed and record remanded for proceedings consistent with this opinion.

---

DISSENTING OPINION BY CERCONE, J.:

I disagree with the reasoning of the majority in parts II and III of its opinion.

The language of the indemnity clause here involved can be and must be declared as a matter of law not to constitute a release of appellee's liability for its own negligence. The case of *Schroeder v. Gulf Refining Co. (No. 2),* 300 Pa. 405 (1930), as quoted and relied on by the majority, so determined the issue when a similar clause was before it for consideration. In that

case the clause in question read: " 'That the party of the second part shall indemnify and save harmless the party of the first part of and from any and all liability for loss, damage, injury or other casualty, to persons or property, caused or occasioned by any leakage, fire or explosion of gasoline stored in said tank, or drawn through said pump, or any other casualty in any way growing out of or resulting from the installation and operation of said equipment; whether due to imperfection in said equipment, or to any fault in the installation and operation thereof, whether the same arises from negligence or otherwise.' "

The Supreme Court of Pennsylvania interpreted that clause as not intending to release the defendant from liability for its own negligence, the court saying: " 'A party may contract for indemnity against the results flowing from his own acts, but no inference from words of general import can establish it; on the contrary, the intent of both parties to that effect must be made apparent by clear, precise and unequivocal language': Camden Safe Dep. & Tr. Co. v. Eavenson, 295 Pa. 357. 'In all cases such contracts should be construed strictly with every intendment against the parties seeking their protection': Crew v. Bradstreet Co., 134 Pa. 161; P. R. R. Co. v. Roydhouse, 267 Pa. 368. Though an agreement of indemnity for loss or damage is enforceable (Rundell v. Lehigh Valley R.R. Co., 254 Pa. 529; Atherton v. Clearview Coal Co., 267 Pa. 425), the purpose to so relieve from liability must clearly appear, and the words used must be construed in connection with the circumstances attending the parties and their object in making the instrument: Perry v. Payne, 217 Pa. 252."

The court then applied that rule to the clause there in question and concluded: "The apparent purpose of the release was to provide against negligence of others, such as the plaintiff, the manufacturer who supplied

the device, the one who installed it, or third parties, but not from the carelessness of defendant's employees in delivering oil into the tank, even though the fuel would subsequently be drawn through the pump, as the needs of customers made this necessary. . . . It would be needless to require a retaking of the testimony if the only question involved is the effect of the release, which, if in force, did not relieve defendant of responsibility."

I see no reason for distinguishing the *Schroeder* decision in the instant case. Nor does the majority, which relies on and approves of the *Schroeder* decision, state any reason for not following the conclusion there reached. In fact, the language of the clause interpreted in the *Schroeder* case was broader in scope in that it included the further phrase, "whether due to imperfection in said equipment, or to any fault in the installation and operation thereof," and yet it was determined that the language was insufficient to evidence an intent to relieve defendant from liability for its own negligence.

I see no reason, therefore, for the majority's remand for a determination as to the intent of the parties when under applicable law we must construe the clause as insufficient to evidence an intent to release the defendant from liability for its own acts of negligence. The case should not be remanded for parol evidence as to intent when the courts have already declared the clause in question as not containing "the clear, precise and unequivocal" language needed to evidence an intent to release defendant from liability for its own negligence.

For similar reasons I dissent from the holding in part III of the majority's opinion in which the case is remanded for evidence as to intent to release defendant from liability for conditions which occurred or

were created prior to the effective date of the clause. Here again the very case quoted and relied upon by the majority, *Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association*, 423 Pa. 288 (1966), determined that: "If a party seeking immunity from liability for negligent conduct intends exculpation for past as well as future negligent conduct it is his obligation to express in the agreement such intent in an unequivocal manner; absent a clear expression of intent, the clause of exculpation will not be so construed. It was the burden of the Association in this case to establish such intent and that burden has not been sustained. A construction of the exculpatory clause in this lease, in conformity with the standards enunciated in our case law, compels the conclusion that this clause was intended to operate prospectively, not retrospectively." The clause in this case contains no unequivocal expression of intent to relieve defendant from liability for past negligent conduct and hence it is improper to remand the case for the taking of parol evidence as to such intent.

I would therefore hold that the indemnity clause in question must be interpreted as a matter of law as not relieving defendant from liability for its own negligence and not relieving defendant from liability for past negligent conduct. I would reverse and remand for proceedings only on the other issues of fact involved.