# Penn Avenue Place Associates v.
# Century Steel Erectors Inc.

C.P. of Allegheny County, no. GD 98-11026.

*Donald L. Best Jr.,* for plaintiffs.
*Joseph H. Bucci,* for defendants.

FRIEDMAN, *J.,* February 10, 2000—

## INTRODUCTION

Plaintiffs have appealed from this court's order dated November 1, 1999, which sustained defendants' preliminary objections and dismissed plaintiffs' complaint with prejudice as follows:

"And now, to-wit, November 1, 1999, it is hereby ordered that the defendants' preliminary objections in the nature of demurrer are *sustained,* except to the extent the plaintiffs are seeking damages for uninsured loss as a result of the fire at issue. This order is without prejudice to the plaintiffs' ability to file an arbitration action for the same uninsured loss. The captioned complaint is hereby dismissed with prejudice."

The plaintiffs' complaint is based on the premise that the law and public policy concerns applicable to tortfeasor indemnification also apply to waiver of subrogation clauses. The court concluded that the mutual waiver of subrogation clause in the instant contract was not void as against public policy. Alternatively, even if somehow such clauses do raise public policy concerns, the one in this case would be enforceable because it meets strict standards for clarity that make even some tort-feasor indemnification clauses enforceable.

It should be noted that counsel for the parties indicated that the insurer was specifically named in the complaint as the real party in interest to bring the ultimate issue of the subrogation rights *of the insurer* to the immediate attention of the court. While a declaratory judgment action might also have been used to achieve this goal, the choice of action made by the plaintiffs and their insurer would ordinarily be given deference, unless a specific preliminary objection was made, as did not occur here.

## FACTUAL BACKGROUND

The action arose from a fire which occurred at a building which was owned by plaintiff Penn Avenue Place Associates L.P.[1] The owner had entered into a contract with defendant P.J. Dick Inc., the general contractor, for the renovation of the building. The general contractor then entered into a subcontract with defendant Century Steel Erectors Inc., the subcontractor, under which it would be responsible for the demolition work associated with the renovation. According to plaintiffs' complaint, "[o]n or about July 9, 1996, sparks, embers and hot debris from the welding and cutting work performed by Century Steel, its agents, representatives and/or employees, dropped to the roof of [the building] and ignited flammable materials located in the area where such welding and cutting work was taking place." (Complaint ¶14.) "P.J. Dick, its agents, representatives and/or employees and Century Steel, its agents, representatives and/or employees were present at the time said sparks, embers and hot debris from the welding and cutting work by Century Steel its agents, servants, and/or employees, fell to the roof and ignited flammable materials located there." (Complaint ¶15.)

Plaintiffs' complaint contains counts labeled gross negligence, negligence, negligence per se, and breach of contract against both defendants. The counts for negli-

---

1. In the complaint, plaintiffs plead that "[t]he real party in interest in this action is Arkwright Mutual Insurance Company, subrogee of PAPA and Oxford Development" (¶3), and that "[a]t all times material to this action, Oxford and PAPA were engaged in the business of owning, leasing, and developing and managing commercial real estate." (¶6.) In the contract attached to the complaint as exhibit "A," Oxford is named as the construction manager.

gence per se were based upon the alleged failures of either or both defendants to comply with City of Pittsburgh Code of Ordinances, section 801.01, and BOCA Code article 21 section F-2100 et seq., which, according to the complaint, required them to "keep a proper fire watch for at least 30 minutes." (Complaint ¶18.)

The defendants then filed preliminary objections to the complaint. The basis of their preliminary objections was a "Waivers of subrogation" clause which was incorporated in the contract between the owner and the general contractor, and in the subcontract between the general contractor and the subcontractor. Defendants argued in their preliminary objections that, since the complaint alleged that the "real party in interest in this action is Arkwright Mutual Insurance Company, subrogee of [plaintiffs]" (complaint ¶3), the instant action was barred by the waivers of subrogation clause in the contract (exhibit A to the complaint) and should be dismissed.

We agreed with defendants and entered the order appealed from, dismissing the instant complaint with prejudice, but permitting plaintiffs, if necessary, to file a separate arbitration claim for reimbursement of the uninsured portion of the loss. The defendants have not disputed their liability to pay that uninsured amount.

## ISSUES RAISED BY PLAINTIFFS

Plaintiffs raise two issues in their statement of matters complained of on appeal. They are summarized below:

(1) That the waiver of subrogation clause is an "exculpatory" clause, against public policy, and should not be enforced by the courts.

(2) Even if the clause is enforceable, the amount of property damage covered by the agreement not to subro-

gate is limited to the areas of the building defined as "the work" and does not bar subrogation of the claims for damage to the other areas of the building.

## DISCUSSION

### 1. The "Waivers of Subrogation" Clause Is Not Void As Against Public Policy

The "Waivers of subrogation" clause at issue here is contained in "AIA document A201/1987, general conditions of the contract for construction, paragraph 11.3.7." (Exhibit "A" to defendants' preliminary objections.) It is incorporated by reference into the contract between the owner and the general contractor at page 8, and into the subcontract between the general contractor and the subcontractor at paragraph 1.4, page 5. (See exhibit "B" to defendants' preliminary objections.) The clause is fully quoted below:

"*11.3.7 Waivers of Subrogation.* The owner and contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the architect, architect's consultants, separate contractors described in article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this paragraph 11.3 or other property insurance applicable to the work, except such rights as they have to proceeds of such insurance held by the owner as fiduciary. The owner or contractor, as appropriate, shall require of the architect, architect's consultants, separate contractors described in article 6, if any, and the subcontracts, sub-subcontractors,

agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged."

In support of their position that defendants may not claim the benefit of this clause, plaintiffs contend that a waiver of subrogation clause is an exculpatory clause upon which the law looks with disfavor. Plaintiffs cite the case *Warren City Lines Inc. v. United Refining Co.,* 220 Pa. Super. 308, 287 A.2d 149 (1971), emphasizing the Superior Court's statement that

"The widespread use of property and liability insurance does not invalidate the policy argument against contracts transferring responsibility for the violation of public safety measures enacted or authorized by the legislature. If all that were involved was the shifting of ultimate loss from one insurer to another, we would not be concerned with the private transfer of risk by contractual agreement. It is an inescapable fact, however, that the party transferring the risk has no incentive to use reasonable care when it is held harmless for all losses resulting from its own negligence, and its insurer has no incentive to provide the transferor with loss prevention services or inspection. This creates a particularly dangerous situation for the public where (1) the party transferring the risk is better able to prevent loss or reduce the risk associated with loss, or (2) where the party to whom the risk has been

transferred does not fully realize the responsibility which it has received." 220 Pa. Super. at 313-14, 287 A.2d at 151-52. (footnote omitted)

Plaintiffs ignore the fact that *Warren City* does not involve waivers of subrogation, but instead involves an indemnity clause that is indeed "exculpatory" because it shifts liability for negligence away from the very party who was negligent. However, regarding the very situation now before us, the Superior Court made a telling remark: "If all that were involved was the shifting of ultimate loss from one insurer to another, we would not be concerned with the private transfer of risk by contractual agreement." 220 Pa. Super. at 313-14, 287 A.2d at 151. In other words, a waiver of subrogation clause, such as the one at issue here, does not invoke public policy concerns because it does not attempt to transfer liability for negligence away from the tort-feasor. Rather, the tort-feasor who obtains insurance coverage to pay claims for which he is liable does not, ipso facto, transfer liability away from himself to the other party to the clause in question. He *satisfies* his debt to that party. The public policy concerns regarding indemnification for one's own negligence are therefore not an issue here. Waivers of subrogation are a matter of contract. There has been no contention that the subrogee insurer was unaware of the waivers of subrogation clause at issue. In fact, it was a standard part of a standard contract (AIA) in the construction industry. The inference from the facts of the complaint is that the insurer was aware of the clause and so had an opportunity to adjust its premium accordingly.

This is *not* analogous to indemnification clauses where the indemnitee is the tort-feasor. The public policy against the reimbursement of a tort-feasor for its own negligence

is clear. As a consequence, the law will enforce such truly exculpatory clauses only where "the intention to include within the scope of an indemnification contract, a loss due to the indemnitee's own negligence, [is] expressed in clear and unequivocal language." *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock,* 404 Pa. 53, 57, 171 A.2d 185, 187 (1961). See also, *Bester v. Essex Crane Rental Corp.,* 422 Pa. Super. 178, 619 A.2d 304 (1993) and *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991).

Even if we assume that waiver of subrogation clauses, after all these years of being matters of the "private transfer of risk by contractual agreement," somehow are now to be viewed as "exculpatory," the analogy to indemnification that plaintiffs espouse would still permit the enforcement of the instant waiver of subrogation clause. The instant waiver is "expressed in clear and unequivocal language." It meets the strictest public policy standards applicable to the enforcement of exculpatory tortfeasor indemnification clauses.

### 2. The "Waivers of Subrogation" Provision Applies to Areas of the Building Not Subject to Renovation, and Plaintiffs Are Precluded From Seeking Damages for Those Areas

Plaintiffs next argue that even if the waiver of subrogation clause applies here, it ought to be limited to the specific areas under renovation, *i.e.,* "the work," so that plaintiffs may nonetheless seek reimbursement as to damages to other parts of the building that were not under renovation. However, the express wording of the waiver of subrogation clause, provides in pertinent part that "[t]he owner and contractor waive all rights . . . *for dam-*

*ages caused by fire* or other perils to the extent covered by property insurance obtained pursuant to this paragraph 11.3 or other property insurance applicable to the work." (emphasis added) There is *no* limit put on "damages caused by fire." Furthermore, it is well-known that it is the nature of fire to spread.

The subrogation clause precludes plaintiffs from seeking reimbursement as to *all* damages caused by a fire that *began* as a result of "the work."

## CONCLUSION

We properly sustained defendants' preliminary objections and dismissed the complaint with prejudice.