**[J-69-2020] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| ANTHONY DEGLIOMINI AND KAREN DEGLIOMINI, | : | No. 5 EAP 2020 |
| | : | |
| | : | Appeal from the Order of |
| Appellants | : | Commonwealth Court dated |
| | : | 06/25/2019 at No. 1573 CD 2018, |
| | : | reversing the 10/24/2018 Order of |
| v. | : | the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| | : | No. 01601 April Term, 2016. |
| ESM PRODUCTIONS, INC. AND CITY OF PHILADELPHIA, | : | |
| | : | |
| | : | |
| Appellees | : | ARGUED:  September 15, 2020 |

**DISSENTING OPINION**

**CHIEF JUSTICE BAER**                                           **DECIDED:  June 22, 2021**

I respectfully dissent from the majority's holding that the exculpatory release entered into by the City of Philadelphia ("City") and Anthony Degliomini, a participant in a charity bike ride, violates public policy on the ground that it immunizes the City from liability for breaching its duty to repair and maintain public streets.  Contrary to the majority, I find no authority in the Political Subdivisions Tort Claims Act, 42 Pa.C.S. §§ 8541-8564 ("Tort Claims Act"), the Philadelphia Home Rule Charter, or governing common law to support the conclusion that the City's duty to repair and maintain public streets is non-waivable.  I further disagree that enforcement of the release would incentivize the City to abrogate its duty to repair and maintain public streets, as the City would have no defense against ordinary negligence claims filed by the majority of the population who traverse the roadways and did not sign an exculpatory agreement expressly waiving the City's liability.  Accordingly, I would hold that the release executed

by Degliomini for purposes of his voluntary participation in the recreational activity of a charity bike race does not violate public policy, and is enforceable to preclude the instant claim of ordinary negligence.

Initially, I observe that it is the Legislature's role to determine what policy aims are important enough to justify overturning a private contract. *See Williams v. GEICO*, 32 A.3d 1195, 1200 (Pa. 2011) (holding that out of respect for the parties' freedom of contract, this Court has expressed great reluctance to disrupt an otherwise valid agreement on public policy grounds). Only a "dominant public policy" as embodied in "long governmental practice or statutory enactments," or "violations of obvious ethical or moral standards" is sufficient to justify a court voiding a private contractual agreement. *Id.* While the City indisputably has a common law duty to repair and maintain its streets for their ordinary and necessary use by the public, the General Assembly has not expressed a public policy against releasing local agencies from liability by contractual agreement in connection with a purely voluntary, recreational activity.

First, the Tort Claims Act has no statutory text or purpose expressing an intent to prevent the City from limiting its liability by contractual release. As observed by the majority, the Tort Claims Act establishes the general rule of governmental immunity from tort liability, and enumerates a limited number of exceptions where the protection is waived and the local agency is subject to liability. Relevant here, Section 8542 provides that a local agency shall be liable for damages for an injury where: (1) the damages would be recoverable under common law or a statute creating a cause of action if the injury was caused by a person not having available a defense of governmental immunity or official immunity; and (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his or her duties with respect to one of the enumerated statutory categories. 42 Pa.C.S. § 8542(a). The category at issue here is

the streets exception, which allows for local agency liability for "a dangerous condition of streets" that "created a reasonably foreseeable risk of the kind of injury which was incurred" where the local agency had "actual notice or could reasonably be charged with notice" in time to have "taken measures to protect against the dangerous condition." *Id.* at § 8542(b)(6).

Recognizing that only the Legislature can confer immunity upon local agencies, the majority reasons that the City's employment of a release in connection with a charity bike ride "would allow the City to confer immunity upon itself" for claims covered by the release. Majority Opinion at 31. It emphasizes that "[w]hat the General Assembly did not provide [in the Tort Claims Act], however, is a mechanism for a municipality to immunize itself, through exculpatory contracts or any other means." *Id.* at 30.

In my view, this reasoning conflates statutory governmental immunity with a private contractual release of liability, which does not confer immunity from suit, but merely provides a defense to liability for particular enumerated conduct. The majority identifies no language in the Tort Claims Act indicating that a local agency is precluded from limiting its liability for a voluntary, recreational activity by employing an exculpatory release. To the contrary, the Act instructs that, in a lawsuit under one of its enumerated waivers of immunity, a municipality may be liable only to the extent that a private defendant would be liable, and a private defendant is free to execute an exculpatory release to limit its risk. Thus, there is no inherent conflict between allowing a local government to be sued and permitting that governmental entity to assert a contractual defense in that lawsuit, like any other private litigant.

The majority's holding to the contrary is inconsistent with the purpose of the Tort Claims Act, which is to limit, not expand, the liability of local agencies. *See McShea v. City of Philadelphia*, 995 A.2d 334, 341 (Pa. 2010) (holding that the clear intent of the Tort

Claims Act is to insulate the government from exposure to tort liability as tort immunity is a non-waivable, absolute defense). It is the immunity from suit that is non-waivable under the Tort Claims Act, not the local agency's liability. *See City of Philadelphia v. Gray*, 633 A.2d 1090, 1093 (Pa. 1993) (holding that the Tort Claims Act precludes the waiver of governmental immunity). Accordingly, I conclude that the General Assembly did not express in the Tort Claims Act a dominant public policy against the City's use of an exculpatory release in order to allow the City to permit community building and charitable activities such as the charity bike ride in this case, without concern that it is exposing itself to non-waivable tort damages.

I further find that the Philadelphia Home Rule Charter expresses no dominant public policy against the City's use of exculpatory releases. Respectfully, while the Home Rule Charter codified the City's common law duty to repair its roads, it has nothing to do with tort liability and has no remedial purpose. Rather, Home Rule Charter Section 5-500 is an organizational section that mandates the creation of the Department of Streets and sets forth the functions of the Department upon its creation, which includes the design, construction, repair, and maintenance of the City's streets. *See* Home Rule Charter § 5-500.6. In establishing the Department of Streets, Section 5-500 provides no standard of care or guidelines for how the Department must accomplish its road repair duties. *Id.* As the Commonwealth Court cogently noted, the City's duty to repair public streets under its charter is no different from any other common law duty of care that can be waived.

Additionally, the City's duty to maintain and repair public streets is not analogous to a mandatory health and safety statute that sets forth a particular standard of care. Duties of care arising from mandatory health and safety statutes have been deemed to be non-waivable in the context of regulations such as fire codes, which provide a specific standard of care, such that violation of the statute would constitute negligence *per se.*

*See Boyd v. Smith*, 94 A.2d 44, 46 (Pa. 1953) (holding that a landlord's violation of the fire code constituted negligence *per se* and was non-waivable by an exculpatory clause); *Warren City Lines, Inc. v. United Ref. Co.*, 287 A.2d 149, 151 & n.4 (Pa. Super. 1971) (holding that a fire marshal's regulation could not be waived by an exculpatory clause because the violation of the regulation was negligence *per se*). Here, the majority identifies no health and safety regulation relating to the City's standard of care for repairing a public street. Thus, I do not find that the City's general duty to repair and maintain public streets is akin to a health and safety regulation that is not subject to waiver by exculpatory agreement of the parties.

Finally, I disagree that the City's public duty to maintain and repair the streets is non-waivable because "enforcement of the Release would jeopardize the health, safety and welfare of the public at large, and the Release is thus rendered invalid as it violates public policy principles." Majority at 33. As noted, I do not view the exculpatory release as an abrogation of the City's well-established duty to repair and maintain streets that would jeopardize the health and safety of the general public because the release executed by Degliomini and the other participants in the charity bike race only provides the City with a defense to liability for particular enumerated conduct.

The City's general duty to maintain and repair public streets remains in that the City would have no defense to claims of ordinary negligence raised by the overwhelming segment of the population who could have been injured by the negligently repaired sinkhole and did not sign an exculpatory agreement expressly waiving the City's liability in that regard. Also, our jurisprudence is clear that the City would remain liable for recklessness and gross negligence in connection with the maintenance and repair of the roads, regardless of the existence of an exculpatory agreement, although no such claims were presented in the instant case. *See Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d

1190, 1203 (Pa. 2012) (holding that contracts waiving recklessness are void against public policy); *Feleccia v. Lackawanna College*, 215 A.3d 3, 20-21 (Pa. 2019) (holding that contracts waiving gross negligence are void against public policy).

Accordingly, I would hold that the General Assembly has not expressed a public policy against releasing local agencies from liability by contractual agreement in connection with a purely voluntary, recreational activity such as the charitable bike race at issue here, in which Degliomini voluntarily participated. Absent a dominant public policy against enforcement of such releases, the releases should be enforced to allow municipalities to coordinate with charitable organizations to host events that raise money for victims that greatly benefit from these types of activities.

Justices Saylor and Todd join this dissenting opinion.