**In re EAGSON CORPORATION, Bankrupt.**

**REPUBLIC REALTY MORTGAGE CORP. and Westinghouse Electric Corp., Plaintiffs,**

**v.**

**Myron HARRIS, Receiver and Eagson Corp., Bankrupt, Defendants.**

**Bankruptcy No. 76–1971EG.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 2, 1980.

See also, Bkrtcy., 26 B.R. 660.

Andre L. Dennis, Philadelphia, Pa., for Republic Realty Mortg. Corp., plaintiff.

Neal D. Colton, Philadelphia, Pa., for Westinghouse Elec. Corp., plaintiff.

Myron Harris, pro se.

Horace A. Stern, Wexler, Weisman, Maurer & Forman, P.C., Philadelphia, Pa., for Myron Harris, receiver, defendant.

Thomas G. Meeker, Philadelphia, Pa., for Eagson Corp., defendant.

Marjorie O. Rendell, Philadelphia, Pa., for the Creditors' Committee.

James Adelman, Philadelphia, Pa., for Quaker Elevator Co.

Alan C. Gershenson, Philadelphia, Pa., for Continental Assur. Co.

J. Dennis Faucher, Philadelphia, Pa., for First Pennsylvania Bank.

Arthur Gallagher, Bryn Mawr, Pa., Michael H. Cox, Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Strouse, Greenberg & Co.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The case at bench involves a motion for summary judgment based on an exculpatory clause. We conclude that there are genuine issues of material fact as to the validity of the exculpatory clause and that, consequently, the issue is inappropriate for summary judgment.

The facts of the instant case are as follows:[1] On October 12, 1972, Republic Realty Mortgage Corporation ("Republic") loaned $400,000 to Eagson Corporation ("Eagson"). On that same date, Westinghouse Electric Corporation ("Westinghouse") loaned $400,000 to Eagson. These loans were evidenced by promissory notes and secured by a mortgage on property of Eagson known as the Argal Building. At that time a written agreement was also entered into by Republic, Westinghouse and Eagson wherein, among other things, it was agreed that the money loaned by Republic and Westinghouse was to be used to complete renovation work being done on the Argal Building. That renovation work had been commenced pursuant to a lease agreement between Eagson (as lessor of the Argal Building) and Westinghouse (as lessee) dated September 1, 1971. In the agreement dated October 12, 1972, it was agreed by Eagson, Westinghouse and Republic that the renovation work would be completed by the Abriola Company ("Abriola") as general contractor.

On October 19, 1976, Eagson filed a petition for an arrangement under Chapter XI of the Bankruptcy Act ("the Act"),[2] and Myron Harris was appointed as receiver on October 21, 1976. On November 18, 1977, Republic and Westinghouse filed a complaint against Eagson and the receiver, seeking to recover liened rents. On October 24, 1978, Republic and Westinghouse filed an amended complaint for recovery of liened rents and various damages. In response to the amended complaint, Eagson filed an answer and counterclaim, the third count of which asserts that the renovation work on the Argal Building, which Eagson avers was under the control of Republic and Westinghouse, was "performed in a poor, improper, and unworkmanlike manner, contrary to the form and effect of [the agreement of October 12, 1972]."[3] Eagson thereby sought damages in excess of $10,000. Republic and Westinghouse filed answers to the counterclaim. In its answer Republic raised the affirmative defense that it was not liable for any damages allegedly caused by the "poor, improper, and workmanlike" renovation work, since by a clause of the agreement dated October 12, 1972, Republic, Westinghouse and Abriola were not to be liable for any action taken or omitted with respect to the renovation work unless caused by their gross negligence or willful misconduct. Based on that defense, Republic filed a motion for summary judgment, in which Westinghouse joined, on that count of Eagson's counterclaim.

The question before us is whether the issue of the validity and effect of the exculpatory clause herein is appropriate for summary judgment. Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in bankruptcy by Rule 756 of the Rules of Bankruptcy Procedure. Rule 56 provides that a motion for summary judgment shall be granted if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

The clause in the October 12, 1972, agreement, under which Republic and Westinghouse assert that they are immune from liability for the damages asserted by Eagson in the third count of its counterclaim, provides:

Neither Republic, Abriola or Tenant [Westinghouse] or any of their Officers, Directors, employees or agents shall be liable to Owner [Eagson] for any action taken or omitted hereunder, or in connec-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The Bankruptcy Act has been superceded by the Bankruptcy Code as of October 1, 1979. However, for petitions filed before that date, the provisions of the Act still govern. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978).

Eagson was unable to fund its proposed plan of arrangement and was duly adjudicated a bankrupt on November 16, 1979.

3. See the Third Count of the Counterclaim of Eagson against Republic and Westinghouse contained in Eagson's Answer filed on November 28, 1978.

tion herewith, unless caused by its or their gross negligence or willful misconduct, nor shall any of them be responsible for any recitals, statements, representations or warranties herein or be required to make any inquiry concerning the performance or observance of any of the terms, provisions or conditions of this Agreement.[4]

To determine the validity and effect of such an exculpatory clause, we must look to Pennsylvania law. According to the relevant case law, several factors must be considered in deciding that issue: (1) the clause may not contravene any public policy; (2) the contract must be between private parties relating to their private affairs; (3) each party must be a free agent, that is, the contract cannot be an adhesion contract; (4) the contract must spell out with clarity and particularity the intention of the parties to exculpate one or more of them from liability; (5) the exculpatory clause must be construed strictly; (6) the clause must be construed against the party seeking immunity thereunder; and (7) the burden of establishing immunity from liability is on the party who seeks such immunity.[5]

Applying that test to the facts of the instant case, it does not appear that the clause in question contravenes any public policy. Nor does there appear to be any question that the contract between Republic, Westinghouse and Eagson is a contract between private parties which relates solely to their own private affairs. Further, even construing the exculpatory clause strictly against Republic and Westinghouse, the clause does clearly and with sufficient particularity evidence the intent of the parties to exculpate Republic and Westinghouse

from any liability except that due to their gross negligence or willful misconduct.

In addition, it is clear that, if the clause is determined to be valid, it would effectively exculpate Republic and Westinghouse from any liability for the damages sought by Eagson in the third count of its counterclaim. As we read that count Eagson is seeking damages only for work done in a negligent manner, not for work done in a grossly negligent manner. The third count seeks damages only for the allegedly "poor, improper, and unworkmanlike" renovation work. This cannot be interpreted to be an allegation of gross negligence or willful misconduct. And, although the third count does contain the phrase "contrary to the form and effect of [the October 12, 1972, agreement]", we do not interpret that to be an allegation of gross negligence or willful misconduct, particularly when that phrase is used in connection with the specific conduct that Eagson cites in its third count as creating the liability of Republic and Westinghouse. The alleged conduct on which Eagson bases its claim for relief does not amount to gross negligence or willful misconduct.

However, Eagson asserts that the contract in question was an adhesion contract, thereby making the exculpatory clause invalid under Pennsylvania law. Eagson asserts that it was in such a poor and unequal bargaining position with respect to Republic and Westinghouse during the negotiation and signing of that contract that it effectively had no choice but to sign the contract or have Republic call a default on its March 24, 1972, mortgage and have Westinghouse call a default on the September 1, 1971, lease. Such economic duress, Eagson asserts, caused it to sign the contract and, if proven, would make that contract an adhe-

---

**4.** Paragraph 17 of the Agreement dated October 12, 1972, between Republic, Westinghouse and Eagson. That agreement is attached as Exhibit D to the amended complaint of Republic and Westinghouse against the receiver and Eagson filed October 24, 1978.

**5.** *Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n,* 423 Pa. 288, 224 A.2d 620 (1966). *See also, Keystone Aeronautics Corp. v. R.J. Enstrom Corp.,* 499 F.2d 146 (3d Cir.1974); *Neville Chemical Co. v. Un-*

*ion Carbide Corp.,* 422 F.2d 1205 (3d Cir.1970); *Dilks v. Flohr Chevrolet,* 411 Pa. 425, 192 A.2d 682 (1963); *Bogutz v. Margolin,* 392 Pa. 151, 139 A.2d 649 (1958); *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595 (1932); *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907); *Crew v. Bradstreet Co.,* 134 Pa. 161, 19 A. 500 (1890); *Zimmer v. Mitchell & Ness,* 253 Pa.Super.Ct. 474, 385 A.2d 437 (1978); *Leidy v. Deseret Enterprises, Inc.,* 252 Pa.Super.Ct. 162, 381 A.2d 164 (1977).

sion contract. In reply, Republic and Westinghouse assert that the agreement was not an adhesion contract but an agreement among business corporations, all of whom were adequately represented by counsel at the time.

We conclude that the assertion by Eagson that the contract was an adhesion contract creates a genuine issue of material fact, since, if Eagson is correct, the exculpatory clause would be invalid under Pennsylvania law and Republic and Westinghouse would not be entitled to summary judgment as a matter of law.[6] Therefore, we will deny the motion of Republic and Westinghouse for summary judgment on the third count of Eagson's counterclaim. At the trial to be held on that count, we will hear evidence on the circumstances surrounding the negotiation and signing of the October 12, 1972, agreement as well as evidence of the specific conduct alleged by Eagson as a basis for its claim for damages.

See also, Bkrtcy., 26 B.R. 657.

6. Ordinarily it is not enough for a party to rest on mere allegations in opposing a motion for summary judgment but must present opposing affidavits. See Rule 56(e) & (f) of the Federal Rules of Civil Procedure. However, since under Pennsylvania law the party seeking immunity under an exculpatory clause has the burden of proving that that clause is valid and effective, we conclude that Republic and Westinghouse have not met that burden of proof on the issue of whether the contract was an adhesion contract. Therefore, Eagson's allegation is enough to create a genuine issue of fact on that question.