See also, Bkrtcy., 26 B.R. 657.

**In re EAGSON CORPORATION, Bankrupt.**

**REPUBLIC REALTY MORTGAGE CORPORATION and Westinghouse Electric Corporation, Plaintiffs,**

v.

**Myron HARRIS, Esquire, Trustee, and Eagson Corporation, Defendants.**

**Bankruptcy No. 76–1971EG.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 29, 1982.

Andre L. Dennis, Philadelphia, Pa., for plaintiff, Republic Realty Mortg. Corp.

---

Raymond W. Midgett, Jr., Philadelphia, Pa., for plaintiff, Westinghouse Elec. Corp.

Myron Harris, pro se.

Horace A. Stern, Wexler, Weisman, Forman & Shapiro, P.C., Philadelphia, Pa., for the defendant, Myron Harris, receiver.

Marjorie O. Rendell, Philadelphia, Pa., for the Creditors' Committee.

Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Strouse, Greenberg & Co.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The case at bench involves a motion for summary judgment by the plaintiffs based on an exculpatory clause which the bankrupt alleges is invalid because it was induced to agree to said clause under economic duress. We will grant summary judgment because we find that there is no genuine issue of fact to be resolved by the court and because the plaintiffs, the movants herein, are entitled to judgment on the law on the basis of the testimony presented.

The facts of the instant case are as follows:[1] On October 12, 1972, Republic Realty Mortgage Corporation ("Republic") loaned $400,000 to Eagson Corporation ("Eagson"). On that same date, Westinghouse Electric Corporation ("Westinghouse") also loaned $400,000 to Eagson. These loans were evidenced by promissory notes and secured by a mortgage on property of Eagson, known as the Argal Building. At that time a written agreement was also entered into by Republic, Westinghouse and Eagson wherein, among other things, it was agreed that the money loaned by Republic and Westinghouse was to be used to complete renovation work being done on the Argal Building. That renovation work had been commenced pursuant to a lease agreement between Eagson (as lessor of the Argal Building) and Westinghouse (as lessee) dated September 1, 1971, and a lease amendment dated March 24, 1972. In the agreement dated October 12, 1972, it was agreed by Eagson, Westinghouse and Republic that the renovation work would be completed by the Abriola Company ("Abriola") as general contractor.

On October 19, 1976, Eagson filed a petition for an arrangement under Chapter XI of the Bankruptcy Act ("the Act"),[2] and Myron Harris was appointed as receiver on October 21, 1976. On November 18, 1977, Republic and Westinghouse filed a complaint against Eagson and the receiver, seeking to recover liened rents. On October 24, 1978, Republic and Westinghouse filed an amended complaint for recovery of liened rents and various damages. In response to the amended complaint, Eagson filed an answer and counterclaim, the third count of which asserts that the renovation work on the Argal Building, which Eagson avers was under the control of Republic and Westinghouse, was "performed in a poor, improper, and unworkmanlike manner, contrary to the form and effect of [the agreement of October 12, 1972]"[3] Eagson thereby sought damages in excess of $10,000. Republic and Westinghouse filed answers to the counterclaim. In its answer Republic raised the affirmative defense that it was not liable for any damages allegedly caused by the "poor, improper, and unworkmanlike" renovation work, since by a clause of the agreement dated October 12, 1972, Republic, Westinghouse and Abriola were not to be liable for any action taken or omitted with respect to the renovation work unless

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The Bankruptcy Act has been superceded by the Bankruptcy Code as of October 1, 1979. However, for petitions filed before that date, the provisions of the Act still govern. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978).

Eagson was unable to fund its proposed plan of arrangement and was duly adjudicated a bankrupt on November 16, 1979.

3. See the Third Count of the Counterclaim of Eagson against Republic and Westinghouse contained in Eagson's Answer filed on November 28, 1978.

caused by their gross negligence or willful misconduct. Based on that defense, Republic filed a motion for summary judgment, in which Westinghouse joined, on that count of Eagson's counterclaim.

The clause in the October 12, 1972, agreement, under which Republic and Westinghouse asserted that they were immune from liability for the damages asserted by Eagson in the third count of its counterclaim, provided:

> Neither Republic, Abriola or Tenant [Westinghouse] or any of their Officers, Directors, employees or agents shall be liable to Owner [Eagson] for any action taken or omitted hereunder, or in connection herewith, unless caused by its or their gross negligence or willful misconduct, nor shall any of them be responsible for any recitals, statements, representations or warranties herein or be required to make any inquiry concerning the performance or observance of any of the terms, provisions or conditions of this Agreement.[4]

On July 2, 1980, 26 B.R. 657, in an opinion involving the same parties, after stating the law of Pennsylvania governing the validity of exculpatory clauses, we held:

> \* \* \* \* \* \*
>
> Applying that test to the facts of the instant case, it does not appear that the clause in question contravenes any public policy. Nor does it appear to be any question that the contract between Republic, Westinghouse and Eagson is a contract between private parties which relates solely to their own private affairs. Further, even construing the exculpatory clause strictly against Republic and Westinghouse, the clause does clearly and with sufficient particularity evidence the intent of the parties to exculpate Republic

and Westinghouse from any liability except that due to their gross negligence or willful misconduct.

> In addition, it is clear that, if the clause is determined to be valid, it would effectively exculpate Republic and Westinghouse from any liability for the damages sought by Eagson in the third count of its counterclaim.
>
> \* \* \* \* \* \*

(Opinion, dated July 2, 1980, at page 659.)

With respect to the validity of the exculpatory clause, we left open only Eagson's contention that it signed the agreement in question under economic duress, which would, if true, make said agreement an adhesion contract, thereby making the exculpatory clause invalid under Pennsylvania law. (Opinion of July 2, 1980 at page 659). On December 28, 1982, testimony was taken on the economic duress issue and at the close of said testimony, Republic and Westinghouse both moved for summary judgment on that issue.[5] Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in bankruptcy by Rule 756 of the Rules of Bankruptcy Procedure.[6] Rule 56 provides that a motion for summary judgment shall be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

In *Levin v. Garfinkle,* 492 F.Supp. 781 (E.D.Pa.1980), *aff'd,* 667 F.2d 381 (3rd Cir. 1981), Chief Judge Luongo of the Eastern District of Pennsylvania enumerated the elements necessary to establish a cause of action for economic duress.

> In order to establish duress, it is necessary to prove that (1) serious economic injury was imminent, (2) exerting such

---

**4.** Paragraph 17 of the Agreement dated October 12, 1972, between Republic, Westinghouse and Eagson. That agreement is attached as Exhibit D to the amended complaint of Republic and Westinghouse against the receiver and Eagson filed October 24, 1978.

**5.** We may properly accept and consider oral testimony in a summary judgment proceeding.

*See Moore's Federal Practice,* ¶ 56.11[8] at 56–293 (2nd ed.1982).

**6.** Rule 756 of the Rules of Bankruptcy Procedure provides that Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. *See Rules of Bankruptcy Procedure,* Rule 756, 11 U.S.C.

pressure that the party involuntarily executed an agreement leading to economic loss, and (3) there was no immediate legal remedy available as an alternative to executing the agreement. [*citing National Auto Brokers Corp. v. Aleeda Development Corp.,* 243 Pa.Super. 101, 105, 364 A.2d 470, 474 (1976)]. The pressure exerted on the party purportedly under duress must be so severe as to 'overcome the mind of a person of ordinary firmness' and where 'persons deal with each other on equal terms at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness'. [*citing Carrier v. William Penn Broadcasting Co.,* 426 Pa. 427, 431, 233 A.2d 519, 521 (1967).] Where a party is free to consult with counsel, the presumption against duress is even stronger, and *only physical restraint preventing consultation with counsel will establish duress. Id.* (emphasis added).

Applying that test to the facts of the case *sub judice,* we conclude that Eagson did not sign the October 12, 1972, contract under economic duress. First and foremost, Arthur Gallagher ("Gallagher"), the president of Eagson, testified that he was at all times represented by counsel during the contract negotiations and that, at the advice of his attorney, he signed the contract in question. In this regard, we take further note that the Supreme Court of Pennsylvania has held that "*in the absence of threats of actual bodily harm* there can be no duress *where the contracting party is free to consult with counsel* (citations omitted) (emphasis added)." *Carrier v. William Penn Broadcasting Co., supra,* at 430–31, 233 A.2d at 521. In addition, the record is completely devoid of any evidence which indicates that Gallagher was at any time threatened with bodily harm by Westinghouse or Republic. Moreover, Gallagher testified he did not have to deal exclusively with Westinghouse or Republic in attempting to finance the renovation work being done on the Argal Building and that he could have arranged the appropriate financing with other parties. Finally, we can find no evidence indicating that Eagson, through its

principal Gallagher, was in such a poor and unequal bargaining position with respect to Westinghouse and Republic that it effectively had no choice but to sign the contract. On the contrary, the present record indicates that Gallagher, the president of Eagson, was an individual of considerable and widespread business experience having been in the trucking and other businesses since 1941 and the real estate business since 1956.

Consequently, in light of the fact that we previously denied Westinghouse's and Republic's motion for summary judgment on the basis that there was a genuine issue of fact as to whether the October 12, 1972, agreement was an adhesion contract, we will now grant that motion based on our determination that, as a matter of law, the aforesaid agreement was not induced by economic duress and, therefore, not an adhesion contract. Therefore, we conclude that the exculpatory clause contained in the agreement of October 12, 1972, is valid and binding.