478 A.2d 1295

**Joseph G. DeFRANCESCO and Frank Crea, t/d/b/a Mt. Washington Ornamental Iron Works Company and Frank G. DeFrancesco and Frank Crea, as individuals**

**v.**

**WESTERN PENNSYLVANIA WATER COMPANY, a corporation, Appellant.**

**Joseph F. LOY and Bernice Loy, t/d/b/a Joseph F. Loy Tire Service, Inc.,**

**v.**

**WESTERN PENNSYLVANIA WATER COMPANY, a corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1983.

Filed June 1, 1984.

Petition for Allowance of Appeal Denied Dec. 3, 1984.

510

514

George I. Buckler, Pittsburgh, for appellant.

Robert W. Murdoch, Pittsburgh, for appellees.

Before SPAETH, President Judge and CAVANAUGH, McEWEN, BECK, MONTEMURO, MONTGOMERY and CERCONE, JJ.

MONTEMURO, Judge:

This appeal is from judgments entered on verdicts in favor of appellees, plaintiffs below. The verdicts awarded damages of $72,000 to Joseph G. DeFrancesco and Frank Crea, trading and doing business as Mt. Washington Ornamental Iron Works, and as individuals; and damages of $173,000 to Joseph F. Loy and Bernice Loy, trading and doing business as Joseph F. Loy Tire Service, Inc. In *DeFrancesco v. Western Pennsylvania Water Co.*, 291 Pa.Super. 152, 435 A.2d 614 (1981), this court vacated the judgments entered on these verdicts on the ground that appellees' claim, that the water company had failed to provide sufficient water and water pressure, was within the original jurisdiction of the Pennsylvania Utility Commission. In *DeFrancesco v. Western Pennsylvania Water Co.*, 499 Pa. 374, 453 A.2d 595 (1982), the supreme court reversed, holding that original jurisdiction properly rested in the trial court. Therefore, the supreme court remanded the case to this court for consideration of the other issues raised by the appellant water company but not decided.

Generally stated, the facts are as follows: On August 11, 1973, at approximately 1:00 a.m., a fire broke out in a pile of tires behind a building on property owned by the Joseph F.

Loy Tire Service, Inc., located at 1655 through 1659 Saw Mill Run Boulevard in Pittsburgh. The City of Pittsburgh Fire Department arrived on the scene while the fire was still confined to the Loy property. However, because of the low volume and sporadic flow of water from the fire hydrants, the Fire Department was unable to contain the fire and it spread next door to the Mt. Washington Ornamental Iron Works Company located at 1651 Saw Mill Run Boulevard. The buildings on both properties and their contents were damaged extensively by the fire.

The issue at trial was who was responsible for the inadequate supply of water. The mains that supplied water to the hydrants were owned and maintained by appellant. Appellees contended that the inadequate supply of water was caused by appellant's employees' negligent repairs on August 10, 1973—the day before the fire. Appellant contended that the inadequate supply was caused by the Fire Department's use of too many pumpers.

The issues now before us for disposition are: (1) whether appellant's liability to appellees is precluded by Rule 17 of appellant's tariff;[1] (2) whether the trial court erred in refusing to instruct the jury on Section 328 D of the Restatement (Second) of Torts; (3) whether the trial court erred in admitting into evidence certain statements allegedly made by unidentified employees of appellant; and (4) whether the trial court adequately instructed the jury that damages could be awarded only for such of appellees' losses as were caused by appellant's negligence. The concurring opinion by Spaeth, P.J., adequately covers the first and second issues, and we adopt that portion of President Judge Spaeth's opinion as our own. With respect to the third issue, we hold that the trial court erred, and that a new trial must be granted. Thus, we need not consider the fourth issue, for we see no reason to suppose that it will arise again at the new trial.

1. The Bell Telephone Company of Pennsylvania filed an *amicus curiae* brief addressing this issue.

Appellant's third argument is that the trial court erred in admitting into evidence certain statements allegedly made by unidentified employees of appellant. These statements were admitted, over objection, in the testimony of Battalion Fire Chief Henry Dudek and in the testimony of appellee Joseph Loy. Chief Dudek testified that while at the scene of the fire on August 11, 1973, at approximately 6:00 a.m., a man approached him and identified himself as an employee of the appellant. Chief Dudek testified that when he asked this man what happened to the water, the man responded, "[I]t's not eight or twelve inch mains. It's a four inch main and the valve at the other end was turned down because they were repairing that line—working on the line." N.T. 269. The trial court allowed this testimony into evidence "as nonhearsay and not to prove the truth of the matter asserted therein." N.T. 284. Chief Dudek testified that the man did not have on a uniform and did not carry any identifying papers, and that he did not see the man get out of one of appellant's vehicles. He further testified that shortly after 2:00 a.m. he had called the fire alarm operator to request that the operator get in touch with appellant and that he assumed that the man had come in response to the operator's call. Chief Dudek testified that he himself was distinguished from other firefighters on the scene in that he was dressed all in white.

Appellee Joseph Loy testified that he was at the fire scene on August 11, 1973, and between 11 a.m. and 12 noon, an "old Italian fellow" approached him and stated, "I guess you think I played a dirty trick on you. We weren't allowed to work overtime." N.T. 43. The trial court admitted this statement not to prove the truth of the matter asserted but for the fact that it was made. N.T. 42. Mr. Loy testified that he did not know the man's name but that he knew that he was employed by appellant because on the morning of the fire the man was in one of appellant's trucks, and also because he had seen the man before in one of appellant's trucks, had talked with him on previous occasions, and had previously sold him tires.

Appellees argue that each of the above statements was admissible on each of three grounds: (1) as nonhearsay and only to prove that it was made; (2) as within the present sense exception to the hearsay rule; and (3) as within the vicarious admission exception to the hearsay rule. We may quickly dispose of the first two asserted bases of admissibility; the third asserted basis of admissibility will require considerable discussion.

■ The statements were not admissible as nonhearsay only to prove that they were made, and it was error for the trial court to have admitted them on that basis. The fact that the statements were made was of no relevance to any fact of consequence in the case. The statements were only relevant to prove the truth of the matter asserted, *i.e.*, that appellant was at fault. They were, therefore, hearsay and inadmissible unless within an exception to the hearsay rule.

■ Even though it was error for the trial court to have admitted the statements as nonhearsay, the error would be inconsequential if the statements could properly have been admitted as an exception to the hearsay rule. *See Commonwealth v. Whitehouse*, 222 Pa.Super. 127, 292 A.2d 469 (1972). Appellees' argument that the statements were properly admissible as within the present sense exception to the hearsay rule is, however, without merit. Neither statement concerned conditions or events that the declarant was observing at the time of the declaration. *See Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387 (1974); McCORMICK ON EVIDENCE § 298 (2d ed. 1972).

We now consider appellees' argument that the statements were admissible under the vicarious admission exception to the hearsay rule. Appellees contend that a "less restricted" vicarious admission rule should be adopted in Pennsylvania in place of the "traditional, restricted" vicarious admission rule. The traditional rule is that statements made by a party's agent may be offered in evidence against him if the agent had authority to make the statement. McCORMICK ON EVIDENCE § 267 (2d ed. 1972). Obviously, the state-

ments objected to here would not be admissible under the traditional vicarious admission rule. This is so because even if the requirement of agency was proven, there is no indication that either of the declarants had *authority* to make his declaration.

Appellees assert, however, that the rule to be applied in Pennsylvania is the "less restricted" rule. That rule provides that a statement offered against a party will be admissible if it is "a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Federal Rule of Evidence 801(d)(2)(D). While we are sympathetic to appellees' arguments that the traditional rule should be reexamined, it is not our prerogative to replace a rule of evidence which has consistently been applied in this jurisdiction.

The concurrence of President Judge Spaeth springboards to the adoption of the "less restricted" rule from the premise that the law in Pennsylvania on the vicarious admission standard is "unclear." Specifically, President Judge Spaeth finds that he cannot tell whether the traditional rule was applied in *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975), and *Murray v. Siegal*, 413 Pa. 23, 195 A.2d 790 (1963), the two cases relied upon by appellant. It is obvious that these cases refer to the traditional rule requiring agency plus authority, and do *not* refer to any sort of "less restricted" rule requiring agency plus something less than authority:

> The trial judge excluded a memorandum of defendant's chief test pilot to the defendant's president dated January 24, 1960, as hearsay. The memorandum was written by Captain Erickson while he was an *agent* of the defendant in the course of his duties *and within the scope of his authority*, and thus is admissible as substantive evidence against the defendant (emphasis added).

*Berkebile, supra,* 462 Pa. at 102 n. 9, 337 A.2d at 903 n. 9.

Neither was it admissible as an admission by an agent of the city against the city's interest. Admissions of a

declarant are not admissible against his asserted principal, unless the declarant's *agency and authority* are first established: *Central Pennsylvania Telephone Co. v. Thompson,* 112 Pa. 118, 3 A. 439 (1886); *Yubas v. Makransky,* 300 Pa. 507, 150 A. 900 (1930) (emphasis added). *Murray, supra,* 413 Pa. at 31, 195 A.2d at 794. Indeed, the cases cited in *Murray* for the agency plus authority standard are demonstrative of the traditional rule.

President Judge Spaeth, after reading ambiguity into these straightforward recitations of the traditional rule, goes on to reason that even if the traditional rule had, in fact, been applied in *Berkebile* and *Murray,* those opinions do not *require* that the traditional rule be applied. His logic is that since agency and authority were clearly exhibited in *Berkebile,* and since agency and authority were clearly not exhibited in *Murray,* in neither case did the supreme court have the occasion "to consider whether the traditional, restricted rule was to be preferred as sounder than a less restricted rule." (Concurring opinion of Spaeth, P.J. at p. 1310).

■ While the observation that our supreme court has not yet considered a more liberal rule is certainly true, President Judge Spaeth's deduction that this lack of reevaluation emasculates the binding and precedential value of the traditional rule is improper. The reconsideration of established legal principle merely on an attack that a more liberal rule should be applied, renders every established legal principle questionable in undermining the doctrine of *stare decisis.*[2]

2. We offer the observation that President Judge Spaeth appears to say that whenever a less restrictive or more liberal rule has been developed, we as an intermediate appellate court are free to adopt the more liberal rule so long as our supreme court has not spoken to it—even though they have always invoked the traditional rule. We cannot endorse that view. As a matter of fact, in *Carswell v. Southeastern Pennsylvania Transportation Authority,* 259 Pa.Super. 167, 393 A.2d 770 (1978); which was also authored by Judge Spaeth, it was said that:

For the sake of argument, we shall assume that the law of Pennsylvania on employees' statements has been the traditional, restricted rule: that such statements are admissible against the

This court is powerless to alter the decisional law of our supreme court. *Commonwealth v. Butch*, 257 Pa.Super. 242, 390 A.2d 803 (1978); *Lowery v. Pittsburgh Coal Co.*, 216 Pa.Super. 362, 268 A.2d 212 (1970).

Furthermore, we note two additional and relatively recent Pennsylvania cases which endorse the traditional rule. In a factual background analogous to the one presently before us, the court addressed the issue of the trial court's failure to admit certain hearsay testimony:

> Immediately after the accident [Mrs. Watkins/plaintiff fell on the premises of a club] one or two persons gathered around Mrs. Watkins, and one, whom Mrs. Watkins was unable to identify by name, stated that Mrs. Watkins should be sent to the hospital and that Mrs. Watkins should not worry because they would take care of this matter. Mr. Watkins testified that he did not know the man's name but he 'took it to be the Governor of the Lodge and the Secretary.' Appellants could not and did not establish that it was the Governor or the Secretary or an officer of the defendant, or that he had authority to bind the defendant, or even that he had witnessed the accident. The lower Court correctly excluded this evidence.

*Watkins v. Sharon Aerie, No. 327 Fraternal Order of Eagles*, 423 Pa. 396, 401, 223 A.2d 742, 745 (1966). In *Adams v. Mackleer*, 239 Pa.Super. 244, 361 A.2d 439 (1976), this court found that appellant-mother's admission should

employer as vicarious admissions only upon proof of either express or implied authority to make the statements. We are persuaded, however, that this should no longer be the law of Pennsylvania. *Id.*, 259 Pa.Super. at 178–79, 393 A.2d at 776. That statement would seem to be at variance with what is now said in President Judge Spaeth's concurrence; i.e., "But where the Supreme Court's decisions may reasonably be read as ambiguous, we should not hesitate to explore the issues with fresh eyes, for in that way we may best serve not only the trial courts, but also the Supreme Court." (Concurring opinion of Spaeth, P.J. at 1310). We respectfully submit that to see the supreme court as having adopted anything other than the traditional rule can only be as a consequence of judicial myopia. One can only wonder why four of the five judges who participated in *Carswell*, only voted to concur in the result.

not have been admitted at trial due to the resulting prejudice against appellant-son, and further:

Appellant-mother was not appellant-son's authorized agent in this matter and was not empowered to make admissions on behalf of appellant-son.

*Id.* 239 Pa. at 249, 361 A.2d at 441.[3]

■ Thus, we hold that there is no confusion in the law of Pennsylvania regarding the vicarious admission exception to the rule against hearsay,[4] that Pennsylvania has consistently applied the traditional vicarious admission rule requiring proof of agency plus authority, and that we are bound by the decisional law. While we are mindful of the often harsh results effected by the precise and parsimonious exceptions to the rule against hearsay, such sympathy does not afford this court a foothold towards the abrogation of these established exceptions. We reverse the trial court

**3.** In the specialized situation of vicarious admissions in the attorney/client context, it is clear that the traditional rule must be met:

On several occasions our courts have considered admissions purportedly made by attorneys. In these opinions there emerges a great reluctance to admit such evidence in the absence of express authority by the client. The rule which has emerged from the cases is that, 'If the admissions are made out of court and not in the presence of the client, *authority to make them or knowledge or assent of the client thereto must be shown.*' 1 Henry, Evidence § 97 pp. 144–45 (4th ed. 1953).

In *Mahler v. Singer,* 285 Pa. 540, 545, 132 A. 718, 720 (1926), the Supreme Court stated: 'We agree with the conclusion of the court below that this testimony as to declarations alleged to have been made by appellee's attorney was inadmissible. *No authority was shown from his client* which warranted the making of such a statement and the client was not present when it is alleged to have been made. As was said by the superior court in *McGarry v. McGarry,* 9 Pa.Super. 71: 'It would be an intolerable rule if it were to be held that the rights of clients could be divested by loose expressions of their attorneys.' Under the circumstances here shown, the declarations of the attorney should not have been received.' (emphasis added).

*Geesey v. Albee Pennsylvania Homes, Inc.,* 211 Pa.Super. 215, 221–22, 235 A.2d 176, 179–80 (1967).

**4.** The opinion by Spaeth, J. in *Carswell v. Southeastern Pennsylvania Transportation Authority,* 259 Pa.Super. 167, 393 A.2d 770 (1978), is not binding precedent as two judges did not participate in that decision, and the remaining four judges concurred only in the result.

on the basis that the statements admitted were improper under the traditional vicarious admission rule. The prejudicial impact of those statements is self-evident.

Having determined that the limitations of this court preclude us from embarking on the path chosen by President Judge Spaeth, we none-the-less entreat our supreme court to reevaluate its unflinching application of the traditional vicarious admission rule. Unlike the concurrence of President Judge Spaeth, we do not advise a radical revision of the traditional rule to some point of illogical hybridization. Instead, we suggest retention of the traditional rule but would create, in addition thereto, a new rule directly responsive to the serious inequities which result from the exclusion of employee statements. To fashion such a new rule, it must be recognized that a complete departure from the usual hearsay analysis is necessitated. To assist in any possible reconsideration, we offer the following observations and ruminations.

■ Hearsay exceptions have historically been justified under two divergent theories. The first and most common justification for the admission of hearsay statements is that such statements exhibit a high degree of reliability, so that the denial of the right to cross-examination is minimized. Thus, a jumble of hearsay exceptions have sprung up on the basis that the circumstances surrounding the statement guarantee the requisite measure of reliability.

■ There exists, however, a very narrow second category of hearsay exception which does not deal with reliability at all. Instead, out-of-court statements may be admitted *regardless* of trustworthiness where the right to cross-examination is preserved. This category originates with the case of party admissions. The reason for the admission of a party's statement is not that it is especially reliable, but rather, because the right to cross-examination is not lost; i.e., the party is present to take the stand and explain his statement. *See* McCORMICK ON EVIDENCE § 262 (2d ed. 1972); 4 WIGMORE ON EVIDENCE § 1048 (Chad-

bourne rev. 1972). Thus, the hearsay rule is not a ground for objection when a party's extrajudicial opinions are offered *against* him, although it remains a ground for objection when a party attempts to offer his extrajudicial assertions *in his own behalf.* *See* 4 WIGMORE ON EVIDENCE, *supra.* The probative value of such statements derives, therefore, from satisfaction of the hearsay rule via retention of the right to cross-examination, rather than from any independent indicia of reliability.

The alignment of the vicarious admission exception within this dichotomy is squarely in the party admission category. Resorting to the rules of agency, the party admission exception was extended to admit against a party any declaration by the party's agent where the agent had *authority* to make the declaration. With the invocation of authority, agency law permitted an imputation of the agent's declarations to his principal, thereby allowing treatment of the agent's declaration as if it had been made by the principal himself. *Id.,* G. HENRY, PENNSYLVANIA EVIDENCE § 94 (4th ed. 1953), and cases cited therein. The agent's statement being thus attributed to his principal, the rule against hearsay was satisfied for the reason that the right to cross-examination was not lost—the principal as a party was present to explain "his" statement.

In view of this background, it is evident that President Judge Spaeth's purported "liberalization" of the traditional vicarious admission rule is unsound. The analysis engaged in by President Judge Spaeth commences with the premise that all hearsay exceptions are based on a demonstration of special reliability. He next examines the traditional vicarious admission rule and, not surprisingly, finds that the requirement of authority is "simply arbitrary" as an indicant of reliability. Finally, he discards the "arbitrary" requirement of authority and replaces it with other criteria which he feels will alleviate the vexatious consequences of the traditional rule while at the same time offer sufficient assurances of reliability.

This analysis completely confuses the two categories of hearsay exceptions and the unrelated justifications of each. The concurrence of President Judge Spaeth evaluates the traditional vicarious admission rule against the standard of reliability, when reliability has absolutely no bearing on the function of the traditional vicarious admission exception. Furthermore, the attempted relaxation of the rule by removing the requirement of authority, totally destroys the very essence of that exception—without authority, the theoretical scheme of imputation fails. Finally, engrafting a modicum of requirements which demonstrate reliability, onto an ineffectual version of the fiction that cross-examination is preserved, does not enhance admissibility under either category. Thus, we would reject President Judge Spaeth's deduction of the "less restricted" vicarious admission rule under the guise that such a rule is merely an expansion of the traditional position.

The Federal Court system appears to have recognized the distinct natures of the traditional and "less restricted" rules, in that it retains the traditional rule, Fed.Rules of Evidence 801(d)(2)(C), while adding the most generous variation of the "less restricted" rule, Fed.Rules of Evidence 801(d)(2)(D).[5] Since it is clear that, having discarded the requirement of authority, the basis for the "less restricted" rule cannot be the preservation of the right to cross-examination, the question becomes—on what basis does the "less restricted" rule satisfy the hearsay prohibition?

We agree with President Judge Spaeth that the very existence of an employment relationship invests an employee's statement concerning his employment with *some* degree of reliability. An employee is, or should be, knowledgeable about matters within the scope of his employment. Furthermore, since such statements would only be admissible if made before the termination of the employ-

5. Federal Rule of Evidence 801(d)(2)(D) provides that a statement offered against a party will not be hearsay if it is "(D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."

ment, it is presumable that the employee would not jeopardize his job by making a false statement which is costly to his employer.

Concern over reliability, however, is understandable.[6] Since the employee is not personally responsible, "What is to prevent him from playing fast and loose with the facts and to make admissions which are costly to his employer but not to himself?" Report, New Jersey Supreme Court Committee on Evidence 166 (1963) cited in 4 WEINSTEIN'S EVIDENCE § 801(d)(2)(D)[01] (1981). There are also those employees who are disloyal and those who talk too much about things they do not understand. Finally, there is no guarantee in the Federal Rule's formulation of the "less restricted" rule to guard against the possibility that the employee's utterance is itself mere speculation or gossip.[7]

On the whole, therefore, the degree of reliability furnished by the "less restricted" rule falls far below the usual requirement that the particular hearsay be endowed with "extraordinary indicia" of reliability. Thus, we are still left

6. Indicative of a lack of reliability is the fact that an employee's statement may only be offered *against* his employer.

7. If a "less restricted" vicarious admission rule is to be adopted in this jurisdiction, we would agree with President Judge Spaeth's position that it should include a requirement of personal knowledge to combat the likelihood that an employee's statement is based on speculation or gossip. However, we would go no further than that. The concurrence of President Judge Spaeth annexes a general catchall to the Federal Rule formulation, that there exist "circumstances sufficient to justify an acceptance of the statement as reliable." President Judge Spaeth does not limit this to personal knowledge, but intentionally leaves it broad enough to encompass some yet-to-be-encountered sympathetic facts. Thus, beyond personal knowledge, the concurrence of President Judge Spaeth allows a new *ad hoc* determination of reliability. This gestalt approach to reliability is completely unworkable, for there is no definition, standard, or guidance demonstrating when circumstances would justify reliability. If President Judge Spaeth means that a statement is reliable if it passes any of the *established* hearsay exceptions based on reliability, the statement will come in under that exception without regard to any permutations of agency. If he means that, beyond the strictures of the established hearsay rules of reliability, the circumstances somehow exhibit reliability, then again, the statement should be admissible on the basis of this reliability without resort to any principal/agency contortions.

with the question of why the "less restricted" rule deserves to be excepted to the hearsay rule.

The answer seems to revolve around the blatant concern of necessity,[8] and involves a conscious decision to *shift the evidentiary risk* which can neither be significantly minimized by reliability nor obviated by the preservation of the right to cross-examination:

> The argument for the Rule is, first, one of necessity. Unless it is adopted many valid admissions which would help in the effective disposition of litigation would be lost ... To continue the restriction of this exception would be to immunize all principals from statements made by their working agents and employees who transact their business and who get into the accidents....
>
> ....
>
> One final point. It should, perhaps, be pointed out that the present rule places plaintiffs at a disadvantage. A reading of the reports makes it clear that many of the litigations in which this Rule would play a significant role are brought by individuals against companies, most of which are insured. If a rule of evidence tends to disadvantage one group of litigants as against another, and we are uncertain where the greater burden of reliability of such evidence lies, it is unreasonable to suggest that one group of litigants may be in far better condition to accept the risks than the other.

---

8. Necessity arises in part from a gap left by the doctrine of respondeat superior. That doctrine holds an employer legally responsible for the wrongful acts of his employee, if those acts were committed within the scope of employment and during the existence of the employment relation. BLACK'S LAW DICTIONARY 1475 (4th ed. 1957) While this doctrine offers the *potential* to recover against an employer, it does not afford the evidentiary means why which such liability can be realized. Thus, litigants often end up suing the employer on the basis of his employee's acts, but finding themselves unable to analogously hold the employer responsible for the employee's statements. The "less restricted" vicarious admission rule appears to be an evidentiary corollary to the doctrine of respondeat superior. *See* D. BINDER, HEARSAY HANDBOOK § 28.3 (2d ed. 1983). This analysis may explain why the "less restricted" rule should not be extended to the attorney/client situation, where respondeat superior plays no role and there is no corresponding necessity.

Report, New Jersey Supreme Court, Committee on Evidence, *supra*, 165–67. While there is only a mediocre display of reliability in an employee's statement, that display of reliability *coupled* with the realization that the truth will be better served if we err on the side of letting some improper statements in rather than keeping many valid and often essential statements out, supports an exception to the rule against hearsay. The "less restricted" vicarious admission rule derives, therefore, not from standard application of traditional hearsay analyses, but from a fundamental determination of whether social policy requires that *despite* traditional analyses, such a rule should be adopted to accomplish fairness.

We urge a forthright appraisal by our supreme court. Adoption of a "less restricted" vicarious admission rule in this jurisdiction demands no less, and cannot be surreptitiously accomplished under the appearance that it follows docilely from the traditional vicarious admission rule.

Accordingly, the judgments are reversed and the case remanded for new trial. This court does not retain jurisdiction.

SPAETH, President Judge and BECK, J., filed concurring opinions.

McEWEN, J., filed concurring statement.

CERCONE, J., filed concurring and dissenting opinion.

SPAETH, President Judge, concurring:

-1-

Appellant's first argument is that its liability to appellees is precluded by Rule 17 of its tariff, which at the time of the fire was on file with the Pennsylvania Public Utility Commission. Rule 17 provided:

*Liability of Company*

(a) The Company shall not in any way or under any circumstances be held responsible to any person or persons for any loss or damage for any deficiency in the

pressure, volume or supply of water due to any cause whatsoever. The Company will undertake to use reasonable care and diligence in order to prevent and avoid interruptions and fluctuations in the service, but it cannot and does not guarantee that such will not occur.

(b) The Company shall in no event be liable for any damage or inconvenience caused by reason of any break, leak or defect in the Customer's service pipe or fixtures.

The trial court held Rule 17 void as in violation of Article III, Section 18 of the Pennsylvania Constitution,[1] and also, as against public policy. We cannot agree with the first of these two holdings, for under our decision in *Behrend v. Bell Telephone Company*, 257 Pa.Super. 35, 390 A.2d 233 (1978), Article III, Section 18 applies only to acts of the General Assembly and not to tariffs filed by public utilities. The question remains, however, whether Rule 17 is void as against public policy.

In considering this question, we may start with our decision in *Behrend v. Bell Telephone Company*, 242 Pa. Super. 47, 363 A.2d 1152 (1976) (*"Behrend I"*), *vacated,* 473 Pa. 320, 374 A.2d 536 (1977), *reinstated,* 257 Pa.Super. 35, 390 A.2d 233 (1978) (*"Behrend II"*). In *Behrend I* the Telephone Company's tariff provided as follows:

> The liability of the Telephone Company for damages arising out of failure to comply with a customer's direction to install, restore or terminate service, or mistakes, omissions, interruptions, delays, or errors or defects in transmission, or failure or defects in the Telephone Company's equipment [facilities] occurring in the course of furnishing service and not caused by the negligence of the customer ... shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such failure, mistake, omission, interruption, delay, or error or

1. Article III, Section 18 allows the General Assembly to enact workmen's compensation laws and then goes on to provide in relevant part, "but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property...."

defect in transmission, or failure or defect in the Telephone Company's equipment [facilities] occurs.

. . . . .

The Telephone Company, except as provided herein, shall not be liable for damage claimed on account of errors in or omission from its directories nor for the result of the publication of such errors in the directory .... Claim for damages on account of interruptions to service due to errors in or omissions of directory listings will be limited to an amount equivalent to the proportionate charge for that part of the customer's service which is impaired, but not to exceed one-half the local service charges for the service items affected for the period from the date of issuance of the directory in which the mistake occurred to the date of issuance of a new directory containing the proper listing.

242 Pa.Super. at 69, 363 A.2d at 1163 (footnote omitted). In upholding the limitation of liability, we recognized the authority of the PUC to evaluate the reasonableness of tariffs filed with it, both as to rates and as to limitations of liability. Since the tariff was properly filed, we felt compelled to enforce its provisions, including the limitation of liability.

 This case, however, is not governed by our holding and reasoning in *Behrend I.* For while *Behrend I* involved what was clearly a limitation of liability, this case involves what is just as clearly an exculpatory clause. (Appellant argues otherwise, but the argument is without merit; it is hard to imagine broader exculpatory language: "shall not in any way or under any circumstances be held responsible to any person or persons for any loss or damage for any deficiency in the pressure, volume or supply of water due to any cause whatsoever.") To determine the reasonableness of a limitation of liability requires striking a balance of "benefits and burdens," *see Behrend I,* 242 Pa.Super. at 73, 363 A.2d at 1165, and to do that requires the PUC's expertise in ratemaking: the benefit of low rates is balanced against the burden of limited recovery. How-

ever, the determination of the validity of an exculpatory clause, which absolves the utility from all liability, is not an inquiry peculiarly within the PUC's expertise, but, rather, one that courts are familiar with. Accordingly, while we continue to recognize the authority of the PUC to determine the reasonableness of rates, which determination includes the determination of the reasonableness of a limitation of liability, we believe that it was the trial court's responsibility initially, and ours on appeal, to determine the validity of Rule 17 as an exculpatory clause.

Section 195 of the Restatement (Second) of Contracts (1981) provides in relevant part as follows:

(2) A term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if ...

(b) the term exempts one charged with a duty of public service from liability to one to whom that duty is owed for compensation for breach of that duty

We hold that this is a correct statement of the public policy of the Commonwealth. *Cf. Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association*, 423 Pa. 288, 224 A.2d 620 (1966) (exculpatory clause is valid if (1) it is not a matter of interest to the public or State, (2) contract relates entirely to parties' private affairs, and (3) each party is a free bargaining agent and clause is not in effect a contract of adhesion; even valid exculpatory clause will be strictly construed against party seeking immunity); *Phillips Home Furnishings Inc. v. Continental Bank*, 231 Pa.Super. 174, 331 A.2d 840 (1974), *reversed on other grounds*, 467 Pa. 43, 354 A.2d 542 (1976) (invalidated bank's exculpatory provision in night depository agreement); *Warren City Lines, Inc. v. United Refining Co.*, 220 Pa.Super. 308, 287 A.2d 149 (1971) (negligent party may not exculpate himself from liability for property damage caused by violation of regulations intended for protection of public). *See also Cumis Insurance Society, Inc. v. Girard Bank*, 522 F.Supp. 414 (E.D.Pa.1981) (applying

Pennsylvania law, ambiguity in exculpatory agreement resolved against bank).

In *Warren City Lines, Inc. v. United Refining Co.*, *supra*, this court stated the reasons for such a public policy:

The widespread use of property and liability insurance does not invalidate the policy argument against contracts transferring responsibility for the violation of public safety measures enacted or authorized by the legislature. If all that were involved was the shifting of ultimate loss from one insurer to another, we would not be concerned with the private transfer of risk by contractual agreement. It is an unescapable fact, however, that the party transferring the risk has no incentive to use reasonable care when it is held harmless for all losses resulting from its own negligence, and its insurer has no incentive to provide the transferor with loss prevention services or inspection. This creates a particularly dangerous situation for the public where 1) the party transferring the risk is better able to prevent loss or reduce the risk associated with loss, or 2) where the party to whom the risk has been transferred does not fully realize the responsibility which it has received.

220 Pa.Super. at 313–14, 287 A.2d at 151–52 (footnote omitted).

■ The reasoning in *Warren City Lines* is particularly appropriate to the case before us, and leads to the conclusion that the trial court was correct in holding that Rule 17 is void as against public policy. Certainly, appellant would have little incentive to ensure an adequate water supply if it were exculpated from all liability for damages resulting from an inadequate water supply. In addition, since appellant owns and has exclusive responsibility for the maintenance and repair of its water mains and hydrants, it is in the best position to reduce the risk of inadequate water supply. Finally, it is doubtful that appellant's customers were generally aware of its exculpatory clause and therefore knew of their purported responsibility for damages

caused by an inadequate water supply. Since Rule 17 is void, it did not preclude appellant's liability to appellees.

–2–

Appellant's next argument is that the trial court erred in refusing to instruct the jury on Section 328D of the Restatement (Second) of Torts (1965). Section 328D provides in relevant part as follows:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Appellant claims that appellees failed to introduce sufficient evidence to show that conditions (b) and (c) had been satisfied.

This argument is without merit. It amounts to an assertion that appellees should have tried their case according to a certain theory—the theory of *res ipsa loquitur* as stated in Section 328D—and that because appellees' evidence did not satisfy the conditions of that theory, appellees should lose. But it is not for appellant to say how appellees should have tried their case. It is of course true that in *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974), the Supreme Court adopted Section 328D of the Restatement. But Section 328D sets forth only one theory of circumstantial evidence on which a plaintiff may rely in attempting to persuade the jury that the defendant should be held liable. "A *res ipsa loquitur* case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." Section 328D, Comment b (italics

added). *See also Gilbert v. Korvette's, Inc., supra, (res ipsa loquitur* is rule of circumstantial evidence); *Hollywood Shop, Inc. v. Pennsylvania Gas and Water Co.,* 270 Pa.Super. 245, 411 A.2d 509 (1979) (same). Here, while appellees relied primarily on circumstantial evidence to prove their case, they did not choose to attempt to prove their case under Section 328D. Rather, they introduced evidence beyond the "mere occurrence of the event and the defendant's relationship to it;" specifically, they introduced evidence of statements allegedly made by employees of appellant—evidence that we shall discuss in the next part of this opinion. Since appellees did not rely on Section 328D, the trial court did not err in refusing appellant's request to instruct the jury on Section 328D.

■■■ The instruction the court did give regarding circumstantial evidence was as follows:

Under the law circumstantial evidence may be relied upon to prove a case or a contention or a claim. In this case you have heard what the law calls circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances from which it is reasonable to infer the existence of another fact. However, before you can infer the other or alternative fact you must first be satisfied of the existence of the fact or circumstance from which the other or alternative fact is to be inferred. It is not necessary that every fact or circumstance point unerringly to liability. Nor is a party required to exclude every other reasonable hypothesis of the cause of the accident. The facts or circumstances from which the other or ultimate fact is to be inferred must be such that by reasoning from them without resorting to prejudice or guess you the jury can reach the conclusion contended for by the Plaintiff or the Defendant and that the conclusion must be the only one which logically can be reached. It is enough that there be sufficient facts for you the jury to reasonably say that the preponderance favors the conclusion. You may consider circumstantial evidence and you should give it whatever weight you believe it deserves.

N.T. 821–22.

This instruction properly set forth the standard for proving a case on the basis of circumstantial evidence. *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 139, 153 A.2d 477, 480 (1959).

–3–

Appellant's next argument is that the trial court erred in admitting into evidence certain statements allegedly made by unidentified employees of appellant. While I agree with the majority[2] that the trial court erred in this regard, I write separately because I disagree with the standard applied by the majority for the admission of vicarious admissions.

The majority has concluded that the issue of what is the applicable standard for the admission of vicarious admissions under Pennsylvania law is not an open issue; in its view, the Supreme Court has held, and therefore we too must hold, that the applicable standard is the traditional, restricted rule, that a statement is admissible as an admission against the employer only if the employee had express or implied authority to make the statement. I have concluded, however, that Pennsylvania law is unclear and that therefore the issue is open, and, proceeding from that conclusion, that we should adopt and apply to the decision of this case the less restricted rule articulated in the opinion in *Carswell v. Southeastern Pennsylvania Transportation Authority,* 259 Pa.Super. 167, 393 A.2d 770 (1978), that an employee's statement is admissible against the employer if the statement was made before the termination of the employment, concerns a matter within the scope of the employment, and is accompanied by sufficient indicia of reliability. (The opinion in *Carswell* was only the author's;

**2.** While I recognize that only two judges (CAVANAUGH and MONTGOMERY, JJ.) have joined Judge MONTEMURO's opinion without reservation, that is including his view as to what the rule should be, I think it is still appropriate to consider his opinion the "majority opinion" because four judges (CAVANAUGH, McEWEN, BECK and MONTGOMERY, JJ.) agree with the holding that this court is bound by the doctrine of *stare decisis* to apply the traditional rule.

the other judges participating concurred in the result.) Judge CERCONE joins me in these conclusions. However, applying them, he would hold that the trial court properly admitted Chief Dudek's and Mr. Loy's testimony, in other words, that the proof satisfied the *Carswell* standard, *see* Opinion by CERCONE, J., whereas I would hold that the proof did not satisfy the *Carswell* standard and that therefore the trial court erred. Judge BECK agrees with Judge CERCONE and me that the *Carswell* standard should be adopted, but she agrees with the majority that this court is precluded by the doctrine of *stare decisis* from adopting the *Carswell* rule.

In concluding that the traditional, restricted rule is still law in Pennsylvania, the majority relies particularly on *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975), and *Murray v. Siegal*, 413 Pa. 23, 195 A.2d 790 (1963). In *Berkebile*, the Court ordered a new trial and therefore chose to comment on several of the trial court's evidentiary rulings. The Court stated:

> The trial judge excluded a memorandum of defendant's chief test pilot to the defendant's president dated January 24, 1960, as hearsay. The memorandum was written by Captain Erickson while he was an agent of defendant in the course of his duties and within the scope of his authority, and thus is admissible as substantive evidence against the defendant.

462 Pa. at 102, 339 A.2d at 903.

The majority concludes that this language indicates that the Court applied the traditional, restricted rule, in finding the memorandum admissible. However, the Court's limited statement of the grounds for admissibility does not disclose which rule the Court applied. Moreover, its decision did not require application of the traditional, restricted rule, for since that rule was apparently met, there was no need to consider whether the memorandum would have been admissible under a less restricted rule.

In *Murray*, the Court found inadmissible a portion of a letter, which had been found in the city's files and stated

that "a few years back this division had sewer trouble at this location." The Court stated:

Neither was it admissible as an admission by an agent of the city against the city's interest. Admissions of a declarant are not admissible against his asserted principal, unless the declarant's agency and authority are first established: *Central Pennsylvania Telephone Co. v. Thompson*, 112 Pa. 118, 3 A. 439 (1886); *Yubas v. Makransky*, 300 Pa. 507, 150 A. 900 (1930). Such evidence was completely absent.

413 Pa. at 31, 195 A.2d at 794.

Again, this statement does not suggest any requirement that the traditional, restricted rule be applied. For as will be discussed more fully, under any rule—strict or less strict—the declarant's statement is not admissible unless the declarant's agency has been established. Since the Court found that "evidence [of the declarant's agency and authority] was completely absent," the conclusion followed without more that the declarant's statement was inadmissible. Thus, as in *Berkebile*, there was no need for the Court to consider whether the traditional, restricted rule was to be preferred as sounder than a less restricted rule.

The majority cites other decisions by the Supreme Court, but neither do these compel the conclusion that the Court has settled upon the traditional, restricted rule to be preferred as sounder than a less restricted rule. *Watkins v. Sharon Aerie, No. 327 Fraternal Order of Eagles*, 423 Pa. 396, 223 A.2d 742 (1966), is like *Murray* in that there, there was no proof of agency. *Adams v. Mackleer*, 239 Pa.Super. 244, 361 A.2d 439 (1976), did not involve an agency situation at all. *Mahler v. Singer*, 285 Pa. 540, 132 A. 718 (1926), and *Geesey v. Albee Pennsylvania Homes, Inc.*, 211 Pa.Super. 215, 235 A.2d 176 (1967), involved the admissibility of an attorney's statement against the client, which is an issue that has long been treated "more strictly than in respect to statements by other types of agents". McCormick on Evidence § 267 at 644 (Cleary ed. 1972).

I entirely agree with the majority that *at one time* the Supreme Court adhered to the traditional, restricted rule— as courts in general did. The issue, however, is whether the Court *still* does. The manner in which one resolves this issue will depend upon one's attitude towards the doctrine of *stare decisis,* in particular as the doctrine applies to this court as an intermediate appellate court.

I readily acknowledge that it is arguable that an intermediate appellate court should be cautious about any possible deviation from the doctrine of *stare decisis.* In this view, the decisions of the court of last resort should be read conservatively, that is, as not changing the law unless change is plainly indicated. Applied here, that would mean that since *Berkebile* and *Murray* do not plainly state any departure from the traditional, restricted rule, we must apply that rule; if any departure is to be made, it should be by the Supreme Court. I believe that this is a fair summary of the majority's position, and I respect it as a worthy position.

Nevertheless, for my part, I believe that an intermediate appellate court should be bold rather than cautious. We are able, if we wish, to serve as a laboratory of the law. The tensions first experienced by the trial courts are next experienced by us. Certainly, where the Supreme Court has clearly resolved those tensions, one way or another, we must abide by that resolution. But where the Supreme Court's decisions may reasonably be read as ambiguous, we should not hesitate to explore the issues with fresh eyes, for in that way we may best serve not only the trial courts but also the Supreme Court. If our exploration convinces us that a given rule or principle of law should be restated, we may undertake restatement and thereby offer guidance to the trial courts. The Supreme Court may then choose between two courses of action. It may allow further appeal, and helped, it is to be hoped, by our discussion of the rule or principle in question, either correct or approve our restatement; or it may stand aside for awhile and watch to see how as a practical matter our restatement works in the

trial courts. Thus we may assist in the development of the law, ensuring, as best we can, that it will be responsive to society's problems as those problems arise and are manifested in litigation.

The situation presented by this case seems to me just the sort of situation in which we may, and therefore should, assist in the development of the law. The majority concedes "the often harsh results effected by the precise and parsimonious exceptions to the rule against hearsay." *See* Majority opinion at 521. Perhaps, as the majority believes, the Supreme Court *is* still committed to imposing the harsh results effected by the traditional, restricted rule against vicarious admissions, but I do not so read its decisions. As will be discussed in a moment, the traditional, restricted rule has in recent years been abandoned in jurisdiction after jurisdiction. In these circumstances the Supreme Court's resort to such oblique rulings as in *Berkebile* and *Murray* seems to me significant as suggesting hesitancy about the wisdom of adhering to the traditional, restricted rule. (Surely the majority's characterization of the Court's rulings as "unflinching" is unwarranted. Majority opinion at 522.) I therefore do not believe that we are precluded by the doctrine of *stare decisis* from exploring the basis of that rule and considering the force of the criticisms that have been made of it. In this regard, perhaps after all Judge MONTEMURO and I are not so far apart. For while he finds himself "powerless" to depart from the traditional, restricted rule, Majority Opinion at 521, he does "entreat" the Supreme Court to re-examine the rule, *id.* at 522, going on to offer his own criticism (and his criticism of my criticism) of the rule, *id.* at 522–528. Similarly, Judge BECK urges the Supreme Court to reconsider its earlier decisions and offers her own criticisms of the traditional rule and of Judge MONTEMURO's criticism of the *Carswell* rule. I don't propose to respond to Judge MONTEMURO's criticism of my criticism, beyond noting that I agree with much of what Judge BECK says, but I do share his and Judge BECK's hope that the Supreme Court will re-ex-

amine the traditional, restricted rule—now that this court has decided that it is powerless to depart from it.

For me, the conclusion is inescapable that the traditional rule is illogically and unnecessarily restrictive. The premise of the rule against hearsay evidence is that the trier of fact is more likely to arrive at the truth if witnesses are cross-examined. Therefore, in considering whether a hearsay statement should be admitted as within an exception to the rule, the central inquiry should always be whether the circumstances giving rise to the statement offer sufficient assurances of reliability to compensate for the inability to cross-examine the declarant. The traditional rule's emphasis on the declarant's authority does not recognize that this is the central inquiry. For while the fact that the declarant *did* have authority to make the statement offers adequate assurance of reliability, the mere fact that he did *not* have authority in no way shows *un*reliability. To make admissibility of the statement turn upon the declarant's authority is thus simply arbitrary. One court has made this point as follows:

> To say ... that the owner of a motor truck may constitute a person his agent for the purpose of the operation of such truck over public streets and highways, and to say at the same time that such operator is no longer the agent of such owner when an accident occurs, for the purpose of truthfully relating the facts concerning the occurrence to an investigating police officer on the scene shortly thereafter, seems to me to erect an untenable fiction, neither contemplated by the parties nor sanctioned by public policy. It is almost like saying that a statement against interest ... could only have been made had the truck been operated by an officer or the board of directors of the corporation owning the truck; and trucks are not operated that way.

*Martin v. Savage Truck Line, Inc.*, 121 F.Supp. 417, 419 (D.D.C.1954).

The traditional, restricted rule has therefore been severely criticized by distinguished commentators on the law of

evidence, and "[a] substantial trend favors admitting state-
ments related to a matter within the scope of the agency or
employment." Fed.R.Evid. 801(d)(2)(D), Advisory Commit-
tee's Note (citations omitted). *And see* McCormick on Evi-
dence § 267, at 641 (Cleary ed. 1972); 4 Wigmore on Evi-
dence § 1078 (Chadbourn ed. 1972) and 1983 Supp. (collect-
ing cases and jurisdictions).

Once the arbitrariness of the traditional, restricted rule is
appreciated, the question arises how to formulate a less
restricted rule that will still fairly protect the employer.
The formulation in the federal rules is that the statement
must be "by [the] agent or servant concerning a matter
within the scope of his agency or employment, made during
the existence of the relationship." Fed.R.Evid. 801(d)(2)(D).
This formulation has been widely copied. *See* Wigmore,
1983 Supp., § 1078, at 21 n. 2 (some nineteen states have
copied the federal rule); *see also* D. Binder, Hearsay Hand-
book § 28.04 (2d ed. 1983) (characterizing traditional, re-
stricted rule ("[t]he old common law rule") as "now a
minority view"). However, it is not clear from the formula-
tion in the federal rules whether to be admissible the
statement must be one that the agent or servant could
himself have given in testimony. Suppose, for example,
that the statement was by an employee, while he was an
employee, and concerning a matter within the scope of his
employment, but that it was not a statement that the
employee could himself have given in testimony because it
was not made on the basis of his personal knowledge. One
federal court has admitted such a statement. *Mahlandt v.
Wild Canid Survival & Research Center, Inc.*, 588 F.2d
626 (8th Cir.1978). This result, however, has been criti-
cized, 4 Weinstein's Evidence 164–65 (1981) (arguing that
requirement of personal knowledge should be read into
Rule 801(d)(2)(D)), and the opinion in *Carswell* concluded
that it was not enough to show only that the statement was
by an employee, while he was an employee, and concerning
a matter within the scope of his employment. In addition, it
was said, there must be proof of circumstances sufficient to

justify an acceptance of the statement as reliable. (Since there was no such additional proof, admission of the statements was held error and a new trial was granted.)

Having again examined this problem, I remain of the view that we should adopt the rule stated in *Carswell.* For it appears to me to strike a proper balance. On the one hand, unless the traditional, restricted rule is made less restricted, many statements will not be admitted that as a matter of common sense should be admitted as reliable despite the inability to cross-examine the declarant. Wigmore and Weinstein, *supra,* among others, have collected the cases, and it is impossible not to agree with Wigmore's comment that the "quibbles [as to whether there was or was not authority to make the statement] bring the law justly into contempt with laymen." Wigmore, *supra* at 166 n. 2. On the other hand, there is force to the criticism that because an agent or employee may not be, or feel, personally responsible for what occurred—an accident, for example—safeguards should be provided for the reliability of his statement. One such safeguard is the requirement that the statement must concern a matter within the scope of the agency or employment; another is that the statement must have been made during the existence of the agency or employment. Since ordinarily an employee will not jeopardize his job by making a false statement, costly to his employer, it is arguable that these two requirements are enough. In this view, "[t]he authority to do an act would conclusively imply authority to speak narratively about the act, if the utterance were made before the termination of the agency." Weinstein, *supra* at 162, quoting Falknor, "Hearsay," 1969 Law & the Social Order 591, 601. I am not myself persuaded, however, to go so far. Instead, I agree with Weinstein's statement, *supra* at 157:

> Although commentators have suggested that an employee will not make a false statement damaging to his employer, both because he is interested in his employer's welfare and, because he does not wish to jeopardize his job, these reasons ... do not vindicate the unqualified

admission of statements not based on personal knowledge. Such a statement may often consist of no more than gossip or speculation about the matter in issue [footnote omitted]. The mere fact that the agent heard it and repeated it does not remove any of the dangers against which the hearsay rule has traditionally guaranteed.

I should therefore hold, as in *Carswell*, that to be admissible as a vicarious admission, the statement must be by an agent or employee; it must concern a matter within the scope of the agency or employment; it must have been made during the existence of the relationship; and in addition—that is, adding a requirement not specifically included in the federal rule—the circumstances of the statement must be sufficient to justify an acceptance of it as reliable. Weinstein evidently would summarize this last requirement as a requirement that it appear that the statement was made on the basis of the agent's or employee's personal knowledge. Weinstein, *supra* at 157, 164–65. I believe, however, that it is better to state the requirement more generally.

Judge MONTEMURO expresses the opinion that the rule articulated in *Carswell* would create a "completely unworkable" exception to the rule against hearsay. Majority opinion at 525 n. 7. This characterization is, I suggest, unwarranted, given the experience of all of the federal and many of the state courts. In this regard, moreover, one should bear in mind that the rule articulated in *Carswell* is arguably more restrictive than the federal rule in making specific (what in the federal rule is at most only implied, *see* Weinstein, *supra*) the requirement that the circumstances of the employee's or agent's statement must be sufficient to justify an acceptance of the statement as reliable.

This said, it is in order to consider the admissibility of the statements in question in this case. I agree with the majority that if indeed we are bound to follow the traditional, restricted rule, the statements were inadmissible, for there was no proof that the unidentified declarants[4] quoted

by Chief Dudek and Mr. Loy had either express or implied authority to make them. However, were the statements admissible under the less restricted rule articulated in *Carswell?*

This question need not be answered with respect to the statement testified to by Chief Dudek. This is so because as regards the declarant he quoted, there was insufficient evidence of agency. Under *any* test governing the admissibility of vicarious admissions—traditional, restricted rule or less restricted federal or *Carswell* rule—it is essential that the declarant's agency first be established, and this may not be done by the declarant's own statement of his agency; it must be done by other evidence. 4 Wigmore on Evidence, *supra,* § 1078 at 176; McCormick on Evidence, *supra,* § 267 at 642.

Appellees acknowledge that this is the law, but they argue that the declarant's agency was sufficiently proved by such other evidence. They particularly emphasize the evidence that the declarant approached Chief Dudek in response to a call placed to appellant, requesting that someone report to Chief Dudek. In this regard, they note that Chief Dudek testified that he was distinguished from the other firefighters on the scene because he was dressed all in white. This argument, however, is not persuasive. It is true that the fact of agency may be proved by circumstantial evidence, *see* McCormick, *supra,* but here the circumstantial evidence was insufficient to prove agency. Chief Dudek did not himself place the call to appellant, but called the fire alarm operator and requested that he call. Since the fire alarm operator did not testify, the record does not justify appellees' assumption, either that the operator named Chief Dudek and requested that he be sought out, or that the operator requested that a man dressed all in white be sought out. Moreover, it is undisputed that there were employees of appellant's at the scene of the fire. Mr. Ratliff, one of appellant's employees, testified that he received a call from his office and went to the fire at approximately 3:30 a.m. Mr. Marinelli, another of appellant's em-

ployees, testified that he received a call from his office and went to the fire with Mr. Silvestri, his assistant, at approximately 2:45 a.m. Both witnesses testified that they spoke with firefighters at the scene. The record does not disclose, however, with which of the many firefighters on the scene they spoke, or the substance of the conversation. Finally, Mr. Ratliff and Mr. Marinelli both testified that they left the fire at approximately 5:00 a.m. Chief Dudek, however, testified that he requested the fire alarm operator to call appellant shortly after 2:00 a.m., and that the declarant approached him at approximately 6:00 a.m. If indeed the operator did call appellant and request that one of its employees seek out Chief Dudek, or seek out a firefighter dressed all in white, it would seem that Mr. Ratliff, or Mr. Marinelli, or Mr. Silvestri, would have spoken to the Chief. But, if one of them did, the record does not show it. It therefore remains a matter of speculation as to who the man was who approached the Chief, about four hours after the Chief asked the fire alarm operator to call appellant, or why he approached the Chief.

Appellees argue, however, that the content of the declarant's statement itself shows the fact of agency, in that its reference to the dimension of the water main was a reference to a matter that only one of appellant's employees would know. It is true that the content of a statement may support an inference regarding the author of the statement, but that principle is not applicable here. It was stipulated at trial that the main was in fact a six inch main. The declarant, however, stated that it was a four inch main. One can hardly infer that a declarant is another's employee on the basis of an inaccurate statement about the other's business.

With respect to the statement testified to by Joseph Loy, the analysis is somewhat different but the result is the same. For with respect to this statement, there was sufficient evidence of the fact of agency. It therefore is necessary, in my view, though not in the majority's, to consider its admissibility under the less restricted rule articulated in

*Carswell.* Upon applying that rule, I conclude that the statement was not admissible because there was insufficient evidence to justify acceptance of it as reliable. Specifically, it does not appear either that the statement concerned a matter within the scope of the declarant's agency or that the declarant had personal knowledge of the matter asserted.

As mentioned, there was sufficient evidence of agency: Mr. Loy testified that he knew that the declarant—an "old Italian fellow"—was employed by appellant because the declarant was driving one of appellant's trucks on the morning of the fire, he had seen him in the truck before, had spoken to him before, and had sold him tires. This was sufficient circumstantial evidence from which the jury could infer the declarant's agency.

With respect, however, to the reliability of the declarant's statement: As has been noted, the declarant allegedly stated, "I guess you think I played a dirty trick on you. We weren't allowed to work overtime." The trial court's admission of this statement illustrates the danger of vicarious admissions pointed out by Weinstein: they "often consist of no more than gossip or speculation about the matter in issue." Thus: There was no evidence that the declarant had himself worked on the mains in question; or that he knew on the basis of his own observation what work had been done; or who it was who had forbidden overtime work; or how he knew that such an order had been given (had he heard it? or had someone told him it had been given? And if the latter, had that someone heard it?). Finally, the statement is almost empty of facts. "[P]layed a dirty trick" is an opinion, unaccompanied by any statement of basis; and there is no explanation of how, or why, an order not to work overtime constituted a "dirty trick."

Given these facts, it cannot be maintained that the circumstances giving rise to the hearsay in question offered sufficient assurances of reliability to compensate for the inability to cross-examine the declarant. To the contrary, as one considers the statement, the questions one would like to put to the declarant on cross-examination spring to mind

at once, and no where will one find in the record any assurances as to what the answers to those questions would be.

For purposes of contrast and illustration, *Nobero Co. v. Ferro Trucking Inc.*, 107 N.J.Super. 394, 258 A.2d 713 (1969), offers an excellent example of a situation in which a statement by an employee was admitted as a vicarious admission of the employer and would be properly admissible under the rule articulated in *Carswell.* In *Nobero* a landlord sued a tenant to recover for damages resulting from a fire allegedly caused by the negligence of the tenant's employees. The evidence at trial established that two of the tenant's employees were in the building when the fire broke out—a foreman and a mechanic. The fire captain testified that one of these employees stated to him at the scene of the fire:

> They had stenciled the name of the trucking firm on the door of the truck and there was an overspray of paint on another section of the truck and they were washing it off with gasoline ... there was a flash of fire and the fire developed.

Both employees testified at trial; they said that they were working on the truck when the fire broke out—one replacing the tail light and one removing the stencil. Thus, unlike the present case, the statement was factual in nature, and it appeared that the employee making the statement must have had personal knowledge as to the matter asserted therein.

I therefore concur in the majority's conclusion that admission of the statements testified to by Chief Dudek and Mr. Loy was error and requires the grant of a new trial.

BECK, Judge, concurring:

I join the majority's opinion to the extent that it holds that we are compelled by stare decisis to follow existing law on the admissibility of vicarious admissions.

I also agree with both the majority and with President Judge SPAETH that the law in this area should be changed.

I therefore write separately to state my views on the changes that should be made and to respond to some of the majority's concerns.

It is my position that the proposed vicarious admission rule stated by a plurality of this Court in *Carswell v. Southeastern Pennsylvania Transportation Authority,* 259 Pa.Super. 167, 393 A.2d 770 (1978), which Judge SPAETH would adopt in this case, is the better rule. It is time for the courts of this Commonwealth to discard the fictions of the traditional vicarious admission rule in favor of a rule which is founded on the realities of the modern employer-employee relationship and still reasonably safeguards the reliability of the evidence admitted.

Consequently, I would adopt a rule under which the hearsay declaration of an agent would be admissible against his or her principal if:

1) the statement concerns a matter within the scope of the declarant's employment;

2) the statement was made before the termination of said employment; and

3) sufficient proof is made of circumstances indicating reliability, such as:

a) authorization to make the statements;

b) personal knowledge, or;

c) some other indicia of reliability.

See SPAETH, President Judge, concurring, at 1305; *Carswell, supra,* 259 Pa.Superior Ct. at 179–182, 393 A.2d at 776–777.

The majority, while expressing dissatisfaction with the traditional rule, criticizes the *Carswell* proposal for abandoning the theoretical underpinnings of the vicarious admission rule, i.e., the hearsay testimony is admissible as a party admission. The majority, however, favors change in the traditional rule because of "the blatant concern of necessity", but implies that such change be made within the framework of party admissions. This path, if followed, will prove troublesome.

The admissibility of all hearsay is ultimately grounded on reliability even where the theoretical underpinning derives from party admissions. See Spaeth, P.J., concurring, at 539. It seems to me that the majority's attempt to rebuild the theoretical basis for vicarious admissions based on party admissions is misguided for the reasons stated below. As Judge Spaeth noted, "In considering whether a hearsay statement should be admitted as within an exception to the rule, the central inquiry should always be whether the circumstances giving rise to the statement offers sufficient assurances to compensate for the inability to cross-examine the declarant." (SPAETH, P.J., concurring, at 539).

The majority outlines the historic twin bases for exceptions to the rule against hearsay—reliability and the preservation of the opportunity to cross-examine. It is correct that vicarious admissions have traditionally been analyzed under the latter rationale. The requirement of "speaking authority" of the agent supposedly allows us to cross-examine the principal on the agent's statements which are imputed to him by virtue of such authority [ (see J. Weinstein and M. Berger, Weinstein's Evidence ¶ 801(d)(2)(c)[01], at 801–152) ]. Even the Federal Rules of Evidence impliedly continue this analysis by placing vicarious admissions within a class described as "admissions by party-opponent." See F.R.Evid. 801(d)(2).

The majority states that "by removing the requirement of [speaking] authority ... the theoretical scheme of imputation fails." (Majority at 524). Such a result is to be welcomed. In this age when corporations engage in far-flung businesses which cross state and national boundaries, the opportunity to cross-examine the employer is likely to be meaningless. As Weinstein notes, in the most common cases of this kind "the agent was the only one who knew what had happened." J. Weinstein and M. Berger, *supra*, ¶ 801(d)(2)(D)[01], at 801–160. Cross-examining the employer is of little if any value in assessing the credibility of the employee's statements where the employer has no first-hand knowledge of the events themselves or of the declarant/employee's opportunity to observe them.

The party admission rationale is no longer appropriate or relevant. Therefore, I disagree with the majority's recommendation that we retain the traditional rule alongside some new rule created in response to the serious injustices arising out of the unwarranted exclusion of evidence under the traditional rule. The traditional rule is no longer rationally defensible on the fiction of preserved cross-examination through the "theoretical scheme of imputation." For the reasons just stated any new rule cannot rest on the ground of preserved cross-examination. The better approach is to revise the rule on a foundation of reliability. (SPAETH, P.J., concurring at 540–541).

Judge SPAETH is correct when he states that a *lack* of authority has no bearing on the reliability of the employee's statement (see SPAETH, J., concurring, at 539). Although the fact of "speaking authority" is not relevant to the question of admissibility, it is relevant *as evidence of reliability* in a modernized vicarious admission rule. Proof of "speaking authority" will satisfy the reliability prong of the *Carswell* test. *See Carswell, supra,* 259 Pa.Superior Ct. at 181–182, 393 A.2d at 777. *See also* SPAETH, P.J., concurring, at 539 ("[T]he fact that the declarant did have authority to make the statement offers adequate assurance of reliability"). I believe this analysis is sound.

When a principal specifically authorizes an agent to speak on the principal's behalf, the principal is in effect adopting the agent's statements prospectively, and we are justified in assuming he will select a spokesperson who will make reliable statements. I note further that "speaking authority" has been preserved in the *Carswell* test as fact giving sufficient assurance of reliability; therefore, any statement admissible under the traditional rule will also be admissible under such a new rule.

For these reasons, I disagree with the majority's contention that in reforming the vicarious admission rule we necessarily embark on an unprincipled voyage beyond the boundaries of conventional evidentiary analysis. I support the *Carswell* rule and believe it stands on firm ground.

Nevertheless, being aware of our limitations as an intermediate appellate court, I agree with the majority that we are bound by the decisions of our Supreme Court. In light of the existing rule formulated by the Supreme Court, the Superior Court is not free to refashion the rule. I am hopeful that our opinions in this case will indicate to the Supreme Court the pressing need to reconsider its earlier decisions.

McEWEN, Judge, concurring:

I share the view that the statements under discussion were not admissible and that, therefore, a new trial must be granted. I write simply to observe that, as much as I envy the persuasive skills of my eminent colleagues who would revise the vicarious admission rule, I would retain the rule in its present form for all of the reasons that have made it traditional.

CERCONE, Judge, concurring and dissenting:

I agree with the majority's resolution of the first two issues raised by appellant: that is, 1.) finding Rule 17 of appellant's tariff void as against public policy and 2.) concluding that the trial court did not err in refusing to instruct the jury on Section 328(d) of the Restatement (Second of Torts), which deals with *res ipsa loquitur.* With regard to the third issue, the admission into evidence of certain statements allegedly made by unidentified employees of appellant, I agree that the trial court erred in admitting these statements as nonhearsay, but I would find that the error was of no consequence since the statements could properly have been admitted as within the vicarious admissions exception to the hearsay rule.[1] Accordingly, I would affirm the lower court and permit the jury verdicts in favor of appellees to stand.

Like President Judge Spaeth, I believe that Pennsylvania law regarding the applicable standard for the admission of

1. *See Commonwealth v. Whitehouse,* 222 Pa.Super. 127, 292 A.2d 469 (1972) (where judgment of lower court is correct, it can be affirmed

vicarious admissions of employees is unclear, and the issue is an open one. Rather than subscribe, as the majority has done, to the traditional, restricted rule which requires the employee to have express or implied authority to make the statements, I would apply the less restricted rule articulated in *Carswell v. Southeastern Pennsylvania Transportation Authority*, 259 Pa.Super.Ct. 167, 393 A.2d 770 (1978), that an employee's statement is admissible against the employer if the statement was made before the termination of the employment, concerned a matter within the scope of the employment and was accompanied by sufficient indicia of reliability.

Applying the *Carswell* standard to this case, I would find that the evidence, direct and circumstantial,[2] indicates that each element of this less restricted rule has been met. The record reveals that the first statement was made to Fire Chief Henry Dudek. It is uncontradicted that Chief Dudek, upon experiencing water pressure problems at the scene of the fire, placed a call to West Penn Water Company and requested that someone be sent to the scene of the fire. The testimony of two of appellant's witnesses who were employees established that their presence at the fire was not in their usual responsibility, and that but for the radio call, they would not have been on the scene. The unidentified declarant apparently sought out Chief Dudek, the only firefighter dressed completely in white, to offer an explanation as to the reason for the low water pressure.[3] The reasonable inferences, then, are 1.) that the person to whom Chief Dudek spoke was an employee of the Water Company summoned to the fire by the Chief's request for help, and 2.) that this first declarant spoke about a matter within the

on appeal regardless of the rationale employed by the lower court to sustain its action).

2. Proving agency is the initial step under the rule, and this may be done circumstantially. *See* Wigmore on Evidence § 1078 at 176 and McCormick on Evidence § 267 at 641–42 (Cleary ed. 1972).

3. In addition, the testimony of Chief Dudek reveals that the man identified himself as an employee of the water company, although this

scope of his employment and before the termination of his employment.

The second statement testified to by Joseph Loy as having been spoken to him by a "little old Italian man" consisted of words to the effect that "I guess you think I played a dirty trick on you. We weren't allowed to work overtime." The record reveals that Mr. Loy was familiar with this gentleman, although he did not know his name. Loy's testimony was that he had seen the man in one of the Water Company trucks on the morning of the fire and on prior occasions, had sold him tires previously, and that on the morning after the fire, the Water Company truck, with the declarant as part of the crew, returned to the hydrant that had been the subject of the work crew the day before. These facts serve to insure that the declarant uttered a statement within the scope of his employment and before termination of it.

Moreover, this case does not present us with the problem of the *Carswell* case in which this court found there was no showing that the declarants spoke with firsthand knowledge or that their statements were reliable. Herein, both men were at the scene of the fire only because of their employment with the Water Company and their familiarity with the water line in question: the first declarant responded to the Fire Chief's radio call and relayed to the Chief what he perceived as the reason for the low water pressure based upon his earlier work on the line; the second declarant had also been involved in the repair of the water line and was present as part of the work crew. Given these facts, the reliability of the statements is not to be questioned. Having thus met each of the components of the *Carswell* rule, the statements were properly admitted under the vicarious admissions exception to the hearsay rule, and I would affirm the lower court.

self-serving statement by the declarant is not sufficient to prove agency. *See,* 4 Wigmore on Evidence § 1078 at 176.